**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

| | |
|---|---|
| Talbot 2002 Underwriting Capital Ltd, White Mountains Re Sirius Capital Ltd, and Markel Capital Limited,<br><br>    Plaintiffs,<br><br>v.<br><br>Old White Charities, Inc.,<br><br>    Defendant. | Case No.: __5:15-cv-12542__ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Talbot 2002 Underwriting Capital Ltd ("Talbot"), White Mountains Re Sirius Capital Ltd ("Sirius"), and Markel Capital Limited ("Markel") (collectively, "Underwriters"), by and through counsel, hereby file this Complaint for Declaratory Judgment against Old White Charities, Inc. ("Old White"), seeking a declaration that no coverage exists for a claim made on a prize indemnity policy issued to Old White.

**INTRODUCTION**

1.  Underwriters seek a declaration that Old White is precluded from recovering under the policy because of its (1) failure to comply with the minimum yardage representation, (2) material misrepresentations and/or incorrect statements made in the application for insurance, (3) loss resulting from a material deviation from the information provided to Underwriters, (4) failure to make premium payment, and (5) no meeting of the minds.

**I.      THE PARTIES**

2.  Talbot is a foreign entity organized under the laws of England and Wales with its principal place of business at 60 Threadneedle Street, London, EC2R 8HP, England.  Talbot is an underwriter of the insurance policy at issue (described below).  Talbot is a citizen of the

United Kingdom. Talbot has over $75,000 at stake in connection with the amount insured under the insurance policy at issue.

3. Sirius is a foreign entity organized under the laws of England and Wales with its principal place of business at 7th Floor Beaufort House 15 St. Botolph Street, London, EC3A 7NJ, England. Sirius is an underwriter of the insurance policy at issue. Sirius is a citizen of the United Kingdom. Sirius has over $75,000 at stake in connection with the amount insured under the insurance policy at issue.

4. Markel is a foreign entity organized under the laws of England and Wales with its principal place of business at 20 Fenchurch Street, London, EC3M 3AZ, England. Markel is an underwriter of the insurance policy at issue. Markel is a citizen of the United Kingdom. Markel has over $75,000 at stake in connection with the amount insured under the insurance policy at issue.

5. Old White is a non-profit corporation organized under the laws of the State of West Virginia with its principal place of business at 300 W. Main Street, White Sulphur Springs, West Virginia 24986.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship between Underwriters and Old White and the amount in controversy exceeds $75,000.

7. This Court has personal jurisdiction over Old White, who is a resident of Greenbrier County, West Virginia and a citizen of the State of West Virginia.

8. Venue in this District is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in Greenbrier County and because the events giving rise to the claim occurred in Greenbrier County. Greenbrier County is located within this District.

9. An actual case and controversy of a justiciable nature exists between Underwriters and Old White regarding their duties, rights, and obligations, if any, under the subject insurance policy. Underwriters are, therefore, entitled to bring this declaratory judgment action in this Court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

### III. THE UNDERLYING FACTS

**A.  THE POLICY**

10. This matter arises out of Prize Indemnity insurance certificate numbers L009216, L009217, and L009218 issued to Old White (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit 1 ("Ex. 1").

11. The Policy term was June 30, 2015 through July 7, 2015. Ex. 1.

12. The purpose of the Policy was to indemnify Old White in the event of up to three holes-in-one on the designated hole (the 18th Hole) (hereinafter, the "Designated Hole") of the Old White TPC golf course located at The Greenbrier Resort ("The Greenbrier") during The Greenbrier Classic and Pro-Am (the "Tournament") that took place from July 1, 2015 through July 5, 2015. Ex. 1.

13. The Policy states that it will pay $150,000 for the first hole-in-one, $750,000 for the second hole-in-one, and $1,400,000 for the third hole-in-one ($2,300,000 insured in the aggregate) made on the Designated Hole during the Tournament, subject to certain exclusions, conditions, and limitations. Ex. 1.

14.     The Policy provides that "The designated hole smust [sic] be at least 170 yards from the tee." Ex. 1, Warranty #4 (hereinafter, the "Minimum Yardage Representation").

15.     The Policy excludes coverage for "any loss directly or indirectly arising out of, contributed to by, or resulting from: … any material deviation from the information provided to Underwriters and/or their representatives by the Assured and/or the Assured's Agents." Ex. 1, Exclusion #3.

16.     The Policy provides that "It is a condition precedent to this Insurance that the Assured and the Assured's agents have: … declared that all information supplied to Underwriters is in all respects true and complete. Further the Assured agrees that all such information is material and such items form the basis of this Insurance." Ex. 1, Condition Precedent #4.

**B.     THE ASSURED AND THE ASSURED EVENT**

17.     Old White is a West Virginia non-profit corporation and charity established by the Greenbrier Corporation to handle the finances of the Tournament, as is required by the PGA Tour (the "PGA").

18.     The Greenbrier and its owner Jim Justice promoted the Tournament by touting a fan enhancement called the Hole-In-One Fan Jackpot (the "Promotion").

19.     Pursuant to the terms of the Promotion, if a golfer made a hole-in-one on the Designated Hole during the Tournament, fans seated in the grand-stands would receive $100.

20.     If a second hole-in-one was made, fans would receive $500.

21.     If a third hole-in-one was made, fans would receive $1,000.

**C.     THE LOSS**

22.     On July 2, 2015, the first day of the Tournament, two golfers – George McNeill and Justin Thomas – both hit a hole-in-one on the Designated Hole.

23. The hole-in-one shots were hit from a distance of 137 yards.

24. As promised, Mr. Justice reportedly paid fans a total of roughly $200,000 and was to make charitable donations.

25. Old White has made a claim for $900,000 for the two holes-in-one.

**D.     THE UNDERWRITING FILE**

26. Old White submitted an application to insure the Promotion prior to the Tournament.

27. Upon information and belief, Old White sought this coverage through its insurance broker, Bankers Insurance, LLC ("Bankers").

28. Bankers enlisted All Risks, Ltd. ("All Risks") to serve as a broker for Old White to procure insurance for the Promotion.

29. All Risks then approached HCC Specialty ("HCC"), which served as the representative of Underwriters and had authority to place the risk on behalf of Underwriters.

    **1.     The Application for Insurance**

30. In Old White's application for insurance (the "Application"), Old White sought insurance for a "Hole-In-One Event," designating the 18th Hole as the Designated Hole. A true and accurate copy of the Application is attached hereto as Exhibit 2 ("Ex. 2").

31. In the Application, Old White states that the yardage on the 18th Hole was "Approx 175 Average." Ex. 2, p. 2.

32. The Application, a pre-printed document on HCC paper, included the following language: "It is warranted by the Applicant that the Golf Hole-In-One Conditions listed below will be adhered to: … The Insured Hole-In-One must be taken from a distance of at least 150 yards for all competitors." Ex. 2, p. 4.

33. While Old White and/or its agent Bankers handwrote specific changes to some of the "warranties" listed in the Application, no such changes were made to the above-stated language requiring that "The Insured Hole-In-One must be taken from a distance of at least 150 yards for all competitors." Ex. 2, p. 4.

34. The Application further states in pertinent part:

> ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE COMPANY SUBMITTED IN CONJUNCTION WITH THIS APPLICATION ARE HEREBY INCORPORATED BY REFERENCE INTO THIS APPLICATION AND MADE A PART HEREOF.
>
> THIS APPLICATION DOES NOT BIND THE APPLICANT TO BUY, OR THE COMPANY TO ISSUE THE INSURANCE, BUT IT IS AGREED THAT THIS FORM SHALL BE THE BASIS OF THE CONTRACT AND SHOULD A POLICY BE ISSUED, IT WILL BE ATTACHED TO AND MADE A PART OF THE POLICY.

Ex. 2, p. 5.

35. Attached to the Application is a document titled "Producer Narrative/Addendum to 'Hole-In-One' Application" (the "Addendum"). Ex. 2, Addendum.

36. The Addendum states in relevant part: "The hole to be considered for Hole-in-one coverage is #18 which plays an average of 175 yards. The pins (as always in a PGA tour event) will be set in a new location each morning of the Greenbrier Classic by the PGA. The insured has no idea nor will have any influence as to where the pins will be set." Ex. 2, Addendum.

### 2. Pre-Binding Discussions Regarding Yardage

37. After Old White submitted the Application, HCC and All Risks corresponded regarding the issue of yardage. True and accurate copies of said correspondence are attached hereto as Exhibit 3 ("Ex. 3").

38. HCC emailed a proposed binder to All Risks for its review on the afternoon of June 30, 2015. Ex. 3.

39. The All Risks broker responded that he had read the proposed terms of the binder and had only two issues, (1) the effective date and (2) the issue of yardage. Ex. 3. On the yardage issue, the All Risks broker stated:

> Warranty #4 needs to be read approximately 175 yards as I explained a few times the PGA determines the placement of the pin on each hole & it will change from day to day. It may be 173 yards one day & 178 yards the next. The appx average is 175 yards - we certainly don't want the pin to be 172 on one day if there was to be a hole-in-one & coverage to be denied.

Ex. 3.

40. HCC then indicated that it could not use the term "approximately" in the Policy language as "it will be too ambiguous." Instead, HCC suggested use of the following language: "designated holes must be at least 170 yards." Ex. 3.

41. All Risks responded: "That should but that still leaves us with a potential gap that could turn into an E&O issue. Any ideas so we don't end up in some uncovered issue? They have told me what the appx distance is at 175." Ex. 3.

42. HCC responded:

> Since they have already told you that the distance will be approx. 175 yards, and reported 172 yards, I think 170 should cover it. They can still have a distance of 175 yards, as long as the distance is not closer than 170. I think we would have a bigger issue if we wrote 'approximately 175 yards' as it is not a definitive term.

Ex. 3.

43. Upon information and belief, All Risks raised no further issue with this language. Ex. 3.

44. The Policy binder (the "Binder") contains the following language: "The designated hole smust [sic] be at least 170 yards from the tee." Binder, Warranty #4. A true and accurate copy of the Binder is attached hereto as Exhibit 4 ("Ex. 4").

### E. UNPAID PREMIUM

45. The Policy requires that the premium payment for the Policy must be paid "by July 1, 2015 or Underwriters may cancel this insurance." Ex. 1, p. 1.

46. The Policy also contains a condition precedent that provides that "the Assured and the Assured's agents have: … paid the premium due in accordance with the conditions of the quotation." Ex. 1, Condition Precedent #3.

47. The required premium for the Policy is $106,470. True and accurate copies of Invoices reflecting this amount are attached hereto as Exhibit 5 ("Ex. 5").

48. Upon information and belief, neither Old White nor any of its agents have made any premium payments for the Policy.

### F. RESERVATION OF RIGHTS AND DEMANDS FOR COVERAGE

49. Underwriters, through HCC, have reserved rights as to the claim based upon the Minimum Yardage Representation as they learned the holes-in-one were hit from 137 yards, which falls 33 yards short of the minimum yardage of 170 yards represented in the Policy. True and accurate copies of the Reservation of Rights letters are attached here to as Exhibit 6 ("Ex. 6").

50. Old White has objected to the reservation and has demanded HCC withdraw the reservation and pay the $900,000 claim. True and accurate copies of correspondence from Old White and Bankers demanding the withdrawal are attached hereto as Exhibit 7 ("Ex. 7").

51. Old White purportedly claims that it did not agree to the Minimum Yardage Representation or know that such representation was contained in the Policy.

52. Bankers has also demanded HCC withdraw the reservation and pay the claim. A true and accurate copy of this demand is attached hereto as Exhibit 8 ("Ex. 8").

## IV.     CAUSES OF ACTION

### COUNT I – DECLARATORY JUDGMENT

**THE POLICY DOES NOT PROVIDE COVERAGE FOR THE LOSS BECAUSE THE SUBJECT HOLES-IN-ONE WERE HIT FROM A DISTANCE LESS THAN 170 YARDS FROM THE TEE AND FAILED TO SATISFY THE MINIMUM YARDAGE REPRESENTATION**

53.     Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

54.     The Policy includes a representation that the "designated hole smust [sic] be at least 170 yards from the tee." Ex. 1, Warranty #4.

55.     Old White has made a claim for two holes-in-one hit at the Designated Hole from a distance of merely 137 yards from the tee.

56.     As 137 yards is 33 yards short of the represented 170 yards, Old White did not comply with the Minimum Yardage Representation.

57.     Thus, no coverage exists under the Policy.

58.     Underwriters are thus entitled to a declaration that they owe no duty to provide coverage or issue payments to Old White for the loss under the Policy because holes-in-one did not satisfy the Minimum Yardage Representation.

### COUNT II – DECLARATORY JUDGMENT

**UNDERWRITERS MAY RESCIND THE POLICY BECAUSE OF MATERIAL MISREPRESENTATIONS AND/OR INCORRECT STATEMENTS MADE IN THE APPLICATION FOR INSURANCE**

59.     Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

60. Pursuant to W.Va. Code 33-6-7:

> All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of facts, and incorrect statements shall not prevent a recovery under the policy unless:
>
> (a) Fraudulent; or
>
> (b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> (c) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

W.Va. Code 33-6-7.

61. Old White further stated in the Addendum to the Application (incorporated therein) that "The hole to be considered for Hole-in-one coverage is #18 which plays an average of 175 yards." Ex. 2, Addendum. Thus, upon information and believe, this statement was either a misrepresentation or incorrect statement.

62. Old White made a statement in the Application that the yardage on the Designated Hole was "Approx[imately] 175 yards." Ex. 2, p. 2. Thus, upon information and believe, this statement was either a misrepresentation or an incorrect statement.

63. These misrepresentations and/or incorrect statements regarding yardage were material to Underwriters acceptance of this risk, as evidenced by the fact that the Application specifically stated that "The Insured Hole-In-One must be taken from a distance of at least 150 yards for all competitors." Ex. 2, p. 4.

64. Moreover, the Policy provides that "It is a condition precedent to this Insurance that the Assured and the Assured's agents have: … declared that all information supplied to Underwriters is in all respects true and complete. Further the Assured agrees that all such

10

information is material and such items form the basis of this Insurance." Ex. 1, Condition Precedent #4. Thus, all statements provided by Old White to Underwriters (including the misrepresentations and/or incorrect statements referenced above) are material.

65. The aforementioned correspondence between All Risks and HCC regarding the Minimum Yardage Representation further serves as evidence that Old White's misrepresentations and/or incorrect statements that the yardage on the Designated Hole was approximately 175 yards and that the Designated Hole plays an average of 175 yards were material. Ex. 3.

66. In particular, these misrepresentations and/or incorrect statements were material to whether Underwriters would have accepted the risk or the hazard (a hole-in-one hit from 137 yards as opposed to a hole-in-one hit from 175 yards) assumed by Underwriters, under the Policy, because the application expressly states that shots must be taken from a distance of at least 150 yards for all competitors.

67. Further, Underwriters, in good faith, would either not have issued the Policy or would not have issued the Policy in as large of an amount ($2.3 million in the aggregate) subject to the same terms and conditions, if the true facts had been known to Underwriters as required by the Application or otherwise if it were not for the misrepresentations and/or incorrect statements made by Old White regarding yardage.

68. As these misrepresentations and/or incorrect statements were material to Underwriters' decisions to (1) underwrite the risk and (2) underwrite the risk in as large of an amount.

69. Accordingly, Underwriters are entitled to a declaration that they may rescind the Policy as a result of the Old White's material misrepresentations and/or incorrect statements and that Underwriters are not required to return the Policy premium as it was never paid.

70. Alternatively, Underwriters are entitled to a declaration that there is no coverage under the Policy as a result of Old White's material misrepresentations and/or incorrect statements.

### COUNT III – DECLARATORY JUDGMENT

### COVERAGE IS EXCLUDED BECAUSE THERE WAS A MATERIAL DEVIATION IN THE INFORMATION PROVIDED TO UNDERWRITERS

71. Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

72. The Policy excludes coverage for "any loss directly or indirectly arising out of, contributed to by, or resulting from: … any material deviation from the information provided to Underwriters and/or their representatives by the Assured and/or the Assured's Agents." Ex. 1, Exclusion #3.

73. Old White provided certain information to Underwriters, to-wit that the yardage on the Designated Hole was "Approx[imately] 175 yards" and that the Designated Hole "plays an average of 175 yards."

74. On July 2, 2015, the day that the golfers hit two holes-in-one, the 18th Hole played 137 yards.

75. 137 yards is not "approximately" 175 yards, as it is 38 yards shorter than 175 yards. Rather, the difference between 137 yards and 175 yards was a significant deviation.

76. The deviation was material as Underwriters would not have written the Policy or would not have issued the Policy in as large of an amount ($2.3 million in the aggregate) subject

to the same terms and conditions if they knew that the professional golfers were going to attempt to hit holes-in-one from a distance of 137 yards.

77. Thus, coverage is excluded under Exclusion #3 of the Policy.

78. Accordingly, Underwriters are entitled to a declaration that Old White is entitled to no recovery under the Policy as a result of the material deviation.

## COUNT IV – DECLARATORY JUDGMENT

### COVERAGE IS EXCLUDED BECAUSE OLD WHITE DID NOT PAY THE POLICY PREMIUM BY JULY 1, 2015

77. Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

78. The Policy conditions coverage upon payment of the Policy premium of $106,470 by July 1, 2015.

79. Old White did not pay the premium by July 1, 2015.

80. To date, Old White still has not paid the Policy premium.

81. As Old White has not met the condition precedent of paying the Policy premium, Old White is barred from recovering under the Policy.

82. Thus, Underwriters are entitled to a declaration that Old White is barred from recovering any amount under the Policy due to its failure to pay the Policy premium by July 1, 2015.

## COUNT V – DECLARATORY JUDGMENT

### THE POLICY IS VOID BECAUSE OLD WHITE AND UNDERWRITERS NEVER REACHED A MEETING OF THE MINDS AS TO A MATERIAL TERM OF THE POLICY

83. Underwriters repeat and reallege each and every one of the foregoing paragraphs as if fully set forth herein.

84. A material element to forming the purported contract at issue (i.e., the Policy) was how long of a shot (in terms of yards) Underwriters would agree to insure for the Promotion.

85. Old White claims that it did not agree to the Minimum Yardage Representation and believed that the Policy did not include such a representation.

86. Underwriters believed that Old White had agreed to the inclusion of the Minimum Yardage Representation in the Policy.

87. Underwriters agreed to underwrite the risk of the Promotion based upon the inclusion of the Minimum Yardage Representation in the Policy.

88. The Minimum Yardage Representation is material because Underwriters would not have issued the Policy or would not have issued the Policy in as large of an amount ($2.3 million in the aggregate) subject to the same terms and conditions without the inclusion of the Minimum Yardage Representation.

89. As Old White believed that the Policy did not contain a Minimum Yardage Representation and as Underwriters believed that the Policy did contain this representation, the parties failed to reach a meeting of the minds on a material provision of the Policy.

90. As a meeting of the minds is *sine qua non* of all contracts, no contract arose out of the negotiations between Old White and Underwrites.

91. Thus, the Policy is void.

92. Accordingly, Underwriters are entitled to a declaration that they have no obligation to pay Old White any amount under the Policy.

**WHEREFORE**, Underwriters pray for judgment:

a. That no coverage is afforded and no payments are due to Old White under the Policy for the loss resulting from the two holes-in-one because the Policy's Minimum Yardage Representation requiring holes-in-one to be hit from a minimum of 170 yards was not met.

b. That Underwriters are entitled to rescind the Policy based upon Old White's material misrepresentations and/or incorrect statements.

c. As an alternative to rescission, that Old White is not entitled to recover under the Policy because of its material misrepresentation and/or incorrect statement in the application.

d. That no coverage is afforded and no payments are due to Old White under the Policy as a result of the exclusion for material deviations.

e. That no coverage is afforded and no payments are due to Old White under the Policy as a result of Old White's failure to make the Policy premium payment by July 1, 2015.

f. In the alternative to a-d, that the Policy is void due to the parties' failure to reach a meeting of the minds and that no coverage is afforded and no payments are due to Old White under the Policy.

g. Entering judgment in favor of Underwriters and against Old White on any and all grounds set forth in this Complaint; and

h. Awarding Underwriters such other and further relief as the Court may deem just and proper.

This 19th day of August 2015.

/s/ Lee Murray Hall_____
LEE MURRAY HALL, (W. Va. 6447)
**JENKINS FENSTERMAKER, PLLC**
325 8th Street (25701)
Post Office Box 2688 (25726)
Huntington, WV
Telephone: (304) 399-9704
Facsimile: (304) 523-2347
Email: lmh@jenkinsfenstermaker.com

*Of Counsel*

PAUL L. FIELDS, JR., Ga. Bar No. 003420
JOSEPH C. GEBARA, Ga. Bar. No. 550134
JOCELYN C. DEMARS, Ga. Bar. No. 623458
**FIELDS HOWELL**
191 Peachtree Street NE, Suite 4600
Atlanta, GA 30303
Telephone: (404) 214-1252
Facsimile: (404) 214-1251
Email: pfields@fieldshowell.com
jgebara@fieldshowell.com
jdemars@fieldshowell.com

*Counsel for Plaintiffs*