**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

TALBOT 2002 UNDERWRITING
CAPITAL LTD, et al.,

                Plaintiffs,

v.                                 CIVIL ACTION NO.  5:15-cv-12542

OLD WHITE CHARITIES, INC.,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Motion to Dismiss Third Party Complaint for Failure to State a Claim and Incorporated Memorandum of Law* (Document 27) filed by Third Party Defendant HCC Underwriters, Inc. (HCC), the *Response in Opposition* (Document 32) filed by Defendant/Third Party Plaintiff Old White Charities, Inc. (Old White), and HCC's *Reply* (Document 37).   The Court has also reviewed Old White's *Third Party Complaint* (Document 14).   For the reasons set forth herein, the Court finds that the motion should be granted in part and denied in part.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

A brief review of the claims giving rise to the present case is beneficial to effectively address the present motion.   The Plaintiffs in the above-styled action, Talbot 2002 Underwriting Capital Ltd., White Mountains Re Sirius Capital Ltd, and Markel Capital Limited (collectively, the "Underwriters") brought suit against Old White on August 19, 2015.   (Pl.'s Complaint, at 1.)

The Underwriters seek a declaratory judgment on obligations arising under prize indemnity insurance policies issued by the Underwriters to Old White that were in effect from June 30, 2015 through July 7, 2015.   (*Id*. at ¶10-11.)   The policies proposed to compensate Old White for any losses incurred in a "hole-in-one" contest offered by the Greenbrier Resort and hosted on the 18th hole of the Old White TPC golf course during the Greenbrier Classic and Pro-Am (the "tournament"), which took place from July 1, 2015 through July 5, 2015.   (*Id*. at ¶12.)   Under the terms of a promotion offered by the Greenbrier Resort, the Hole-In-One Fan Jackpot (the "promotion"), the Greenbrier promised to pay fans seated in the grandstands $100 for the first hole-in-one, $500 for the second hole-in-one, and $1,000 for the third.   (*Id*. at ¶18-21.)   To insure against these payouts, the policies pledged to pay Old White $150,000 for the first hole-in-one made by a golfer, $750,000 for the second hole-in-one, and $1,400,000 for the third, for a total aggregate insurance value of $2,300,000. (*Id*. at ¶13-14.)   Among the exclusions and limitations in the policies was a provision requiring that the 18th hole be at least "170 yards from the tee." (*Id*. at ¶14.)   During the tournament, two golfers hit a hole-in-one on the 18th hole. (*Id*. at ¶22.) The owner of the Greenbrier Resort, James Justice, allegedly paid fans seated in the grand-stand "a total of roughly $200,000."   (*Id*. at ¶24.)   According to the *Complaint*, both holes-in-one were hit from a distance of 137 yards.   (*Id*. at ¶23.)

HCC served as the representative and agent of the Underwriters in issuing the policy. (*Id*. at ¶29.)   Old White enlisted Bankers Insurance, LLC ("Bankers") to procure the coverage, and Bankers requested that All Risks, Ltd. ("All Risks") serve as broker.   (*Id*. at ¶27-28.)   In their *Complaint*, the Underwriters alleged that Old White, in seeking insurance for the Hole-In-One event, indicated that the yardage on the 18th hole was "[a]pprox 175 [a]verage," and warranted

that "[t]he [i]nsured Hole-In-One must be taken from a distance of at least 150 yards for all competitors." (*Id*. at ¶32.)   HCC and All Risks, Ltd. ("All Risks"), which served as insurance broker for Old White, are alleged to have negotiated the final policy language requiring the 18th hole to be at least 170 yards from the tee.   (*Id*. at ¶40-43.)   While the policy was issued, according to the Underwriters, "neither Old White nor any of its agents" ever paid the required premium payments.   (*Id*. at ¶48.)   Old White subsequently made a demand for $900,000 in insurance coverage on the policy.   (*Id*. at ¶24.)   Underwriters brought suit in this Court, seeking declaratory relief on various claims, including, *inter alia*, (1) that the policy at issue in this case did not provide coverage for Old White's losses, based on the failure to satisfy minimum yardage requirements; (2) that the Underwriters may rescind the policy based on material and/or incorrect statements by Old White; (3) that coverage was excluded based on material deviation in the information provided to the Underwriters by Old White; (4) that coverage is excluded based on Old White's failure to pay the policy premium; and (5) that the policy was void based on the failure of Old White and the Underwriters to reach a meeting of the minds as to a material term for the policy.   (*Id*. at ¶53-92.)

On September 11, 2015, Old White brought the present *Third Party Complaint* (Document 14) against HCC, All Risks, and Underwriters at Lloyd's London ("Lloyd's").   Therein, Old White alleges that HCC and All Risks acted as agents for Lloyd's in procuring the insurance policies at issue in this case.[1]   (Old White's Third Party Complaint, at ¶1-9.)   Old White claims that in applying for these policies, Bankers and Old White "explained all the conditions" for the promotion, including "the fact that Old White had no control over the distance the pins were set

---

[1]  The policy numbers for these policies, per Old White's *Third Party Complaint*, are L009216, L009217, and L009218.   (Pl.'s Third Party Complaint, at ¶6.)

3

because the PGA has sole and exclusive control over the pins." (*Id.* at ¶13.) Specifically, Old White alleges that it placed in the application the following language:

> "Old White Charities requests hole-in-one coverage for all five days of their tournament. The hole to be considered for Hole-in-One coverage is #18 which plans an average of 175 yards. The pins (as always in a PGA tour event,) will be set in a new location each morning of the Greenbrier Classic by the PGA. The insured has no idea nor will have any influence as to where the pins will be set."

(*Id.* at ¶14.) Old White claims that it was "never advised" by HCC, All Risks, or Lloyd's that insurance was unavailable due to its inability to control the distance. (*Id.* at ¶15.) According to Old White, it was "contacted by Bankers" on June 26, 2015, and informed that the insurance was bound for the promotion, and it "overnighted the premium of $112,684.12 to Bankers," after which it was "told the insurance was in effect for the event." (*Id.* at ¶16-17.) Old White claims that the premium check was paid by Bankers "within the time due." (*Id.* at ¶18.) After two golfers hit holes-in-one during the Greenbrier Classic, Old White claims that the Underwriters, All Risks "and/or HCC all wrongfully refused to pay the claims, even though they had bound the coverage and accepted the premium without advising Old White" as to any changes in the application. (*Id.* at ¶23.) Old White claims that it is "entitled to the insurance proceeds," and that "[t]he first time Old White was aware of the alleged 170 yard limit was when they received the reservation of rights letter from HCC." (*Id.* at ¶26.)

Based on these allegations, Old White seeks recovery under West Virginia law for breach of contract by HCC, All Risks, and Lloyd's, as well as punitive damages, pre-judgment and post-judgment interest, and fees and costs.[2] (*Id.* at ¶28-29.) Old White also seeks recovery for breach

---

[2] The Court notes that Old White, in setting forth the various claims in its Third Party Complaint, failed to clearly demarcate which counts contained claims sounding in contract and tort, which claims arose from a breach of the implied covenant of good faith and fair dealing, and which claims alleged fraud. The Court has attempted to clarify, where possible, which allegations set forth by the Plaintiff relate to these various causes of action.

of the implied covenant of good faith and fair dealing, alleging that the Plaintiff's claim that Old White failed to pay the policy premium caused reputational damage to itself, the Greenbrier, and to James Justice.  (*Id*. at ¶30-46.)  Additionally, Old White brought claims for negligence and fraud.  (*Id*. at ¶47-55.)

On October 13, 2015, HCC moved to Dismiss Old White's third party complaint. On October 28, 2015, Old White filed its response in opposition.  HCC filed its reply on November 4, 2015.  The motion is ripe for review.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)"  *Id*.  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint."  *Erikson v. Pardus*, 551 U.S. 89, 93 (2007).  The Court must also "draw[] all reasonable factual inferences from those facts in the plaintiff's favor."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.  *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).  Furthermore, the Court

5

need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570.) In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.) In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557.) "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

### 1) Old White's Breach of Contract Claim

HCC first argues that this Court should dismiss Old White's claims for breach of contract. (HCC's Mem. in Supp. of Mot. to Dismiss, at 6.) HCC argues that it strictly acted as an agent for the Underwriters in procuring the contracts at issue in this case, and that under West Virginia law, an agent of a disclosed principal "who act[s] within the scope of [its] authority may not be held

personally liable on a contract [it] obtains for [its] principal."   (*Id.*, quoting *Fleming v. United Teachers Assoc. Ins. Co.*, 250 F.Supp. 2d 658, 662 (S.D.W.Va. March 5, 2003) (Faber, C.J.).)   In *Fleming*, then Chief Judge Faber held that even if the defendant, an agent for an insurer in a suit for fraud, committed the wrongs alleged by the plaintiff in that case, it was indisputable that the defendant was acting within the scope of the agency relationship, and therefore could not be liable to the plaintiff.   *Fleming*, 250 F.Supp.2d. at 662-663.[3]   HCC claims that as in *Fleming*, Old White seeks to hold it liable for actions taken while serving as agent of Underwriters, and that these claims must therefore inevitably fail under West Virginia law.   *Id.*   HCC further notes that "there are no allegations that HCC acted outside the scope of its authority in relation to any of the events giving rise to the contract and tort claims at issue."   (*Id.* at 7.)

In opposing the dismissal of its claim for breach of contract, Old White emphasizes that while agents of a disclosed principal are generally not liable for breach of contract by the insurer, there is "an exception to this rule under the law of West Virginia" where "the conduct, procedures, or representations of an agent acting within the scope of his authority have created a reasonable expectation of coverage."   (Old White's Mem. in Opp. to Mot. to Dismiss, at 10, citing *Keller v. First National Bank*, 403 S.E.2d 424, 427-30 (W.Va. 1991); *Casto v. Northwestern Mut. Life Ins. Co.*, 2009 WL 2915132, at *2 (S.D.W.Va. Sept. 2, 2009) (Goodwin, C.J.).   Old White argues that

---

[3]  In *Fleming*, the defendant insurer opposed remand to state court of West Virginia by claiming, in part, that the plaintiff fraudulently joined the defendant and the agent in order to defeat the subject matter jurisdiction requirements of federal law.   *Fleming*, 250 F.Supp.2d at 660.   It was in this context that Chief Judge Faber found that under West Virginia law, "duly licensed insurance agents acting within the scope of their employment may not be sued in their individual capacity in tort or contract," because "under West Virginia law … the agent is not a party to the insurance contract."   *Id.* at 662, citing *Shrewsbery v. National Grange Mutual Insurance Co.*, 395 S.E.2d 745, 748 (W.Va. 1990) ("[an insurance agent] is not party to a contract with the insured; rather, he helps the insurance company procure and service the company's contract with the insured.")   Thus, Chief Judge Faber noted that "*Shrewsbery* is consistent with the long standing rule in West Virginia that the agent of a disclosed principal who acts within the scope of his authority may not be held personally liable on a contract he obtains for his principal."   *Id.*, citing *Hoon v. Hyman*, 105 S.E.2d 925 (W.Va. 1921); *Hurricane Milling Co. v. Steel & Payne Co.*, 99 S.E. 490 (W.Va. 1919).

"in this situation, both the agent and his principal will be considered bound by the reasonable expectation of coverage and liable for breach of contract." (*Id*.) No additional argument is made in support of this assertion.

The Court has reviewed the case law set forth by Old White. In *Keller*, the Supreme Court of Appeals of West Virginia reviewed the trial court's decision to dismiss a claim for credit life insurance made by a Plaintiff who was party to a credit loan contract with a financial institution. *Keller*, 403 S.E.2d at 426-27. As alleged in the pleadings, the plaintiff agreed to renew a loan with the understanding that a portion of the payments would fund credit life insurance on the life of one of the borrowers. The bank determined, after the loan was renewed, that the borrower was ineligible for the coverage, and subsequently deducted the premium for the insurance from the amount borrowed, without directly notifying the borrowers. *Id*. at 426. The West Virginia Supreme Court of Appeals found that in the context of creditor life insurance, "generally the creditor acts as an agent for the life insurance company," and if such creditor "creates a reasonable expectation of insurance coverage, then both the insurance company and the creditor would be bound." *Id*. at 428. Facts which would support a "reasonable expectation," according to the court, would include conduct that voids certain safeguards contained in the insurer's procedures or written policies, or the acceptance of an offer to obtain credit life insurance, and acceptance of the premium on the policy. *Id*., citing *Romano v. New England Mutual Life Ins. Co.*, 362 S.E.2d 334 (1987) (insurer could not avoid liability based on condition of policy that was absent from promotional materials); *Virginia First Savings & Loan Association v. Wells*, 299 S.E.2d 370

(1983).  The court further noted that in defending such claims, evidence that "timely notice of denial [of insurance]" and the return of premiums paid may allow a defendant to prevail.  *Id.*[4]

Reviewing the facts alleged in the parties' pleadings, the *Keller* court found that the defendant had created a reasonable expectation of insurance coverage.  *Id.* at 429.  Specifically, the court emphasized that there was an offer of credit life insurance by the agent, that the plaintiffs accepted the offer, and that the premium was financed through the underlying loan.  *Id.*  The court further found that while the defendant "decided its offer was a mistake and allegedly deducted the premium from the amount financed," the alleged failure of the bank, to notify the plaintiffs of the cancellation and resulting lack of insurance, supported reinstating the claims.  *Id.* at 430.

Meanwhile in *Casto*, then Chief Judge Goodwin reviewed a motion to dismiss filed by the defendant insurer in a civil action brought by the beneficiary of an accidental death policy.  *Casto*, 2009 WL 2915132, at *1.  Judge Goodwin recognized that the doctrine of reasonable expectations set forth in *Keller*, as applied to insurance agents, was an "exception" to the general rule that "licensed insurance agents acting within the scope of their employment may not be sued in their individual capacity in tort or contract."  *Id.*, citing *Lawson v. American General Assurance Co.*, 455 F.Supp.2d 526, 530 (S.D.W.Va. 2006); *Costello v. Costello*, 465 S.E.2d 620, 624 (W.Va. 1995); *Keller*, 403 S.E.2d at 428.  However, Judge Goodwin also noted that the Supreme Court of West Virginia had limited the doctrine of reasonable expectations in the insurance context to cases where there was an "ambiguity regarding the terms of th[e] [insurance] contract."  *Id.*,

---

[4]  These rules, the court found, were consistent with the "traditional rule that any ambiguities in an insurance policy … be resolved in favor of the insured," and the related rule that "notice of cancellation of insurance" must be "clear, definite and certain."  *Keller*, 403 S.E.2d at 428.

quoting *Robertson v. Fowler*, 475 S.E.2d 116, 120 (W.Va. 1996). Judge Goodwin noted that courts in this district have further limited the application of the doctrine to cases where "an insurance agent took affirmative action or made specific statements which created a misconception regarding the insurance policy. *Id*., citing *Hill v. John Alden Life Insurance Co*., 556 F.Supp.2d 571, 574-75 (S.D.W.Va. 2008).[5]

Thus, generally, under West Virginia law, a plaintiff may not recover against an agent of an insurer for breach of contract where the agent is not a party to the underlying contract. *Fleming*, 250 F.Supp. 2d at 662. The exception occurs where the agent and the insurer have created a reasonable expectation of insurance coverage. *Casto*, 2009 WL 2915132, at *1; *Keller*, 403 S.E.2d at 426-28. In general, the doctrine of reasonable expectations requires "that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Lansing*, 2012 WL 1566354, at *4, quoting *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (W.Va. 1987). Whether a reasonable expectation of coverage exists depends on the facts alleged in the pleadings, and under West Virginia law, traditionally required a showing of ambiguity in the language of the contract. However, the rule has been extended to cover situations where statements or actions by an agent created a misconception regarding the coverage provided by the policy. *Casto*, 2009 WL

---

[5] This Court has previously discussed the application of the reasonable expectations doctrine in the context of insurance coverage, in *Lansing v. Allstate Ins. Co.*, 2012 WL 1566354 (S.D.W.Va. May 2, 2012) (Berger, J.), where the plaintiff sought to recover from an insurer and an agent for breach of contract, among other claims. As in *Fleming*, in *Lansing* the defendant opposed remand in part by claiming that the plaintiff fraudulently joined the agent. *Lansing*, 2012 WL 1566345, at *2-3. This Court found that while the reasonable expectations doctrine did allow recovery against agents of an insurance company for breach of contract in certain circumstances, none of those circumstances were present. *Id*. Thus, this Court found that there was "no possibility or even a glimmer of hope" of recovery by the plaintiff against the agent, and that joinder of the agent was, therefore, inappropriate. *Id*. at *4.

2915132, at *1-2; *Robertson*, 475 S.E.2d at 120; *Hill*, 556 F.Supp.2d at 574-75.   The doctrine is "generally limited to specific conduct by an agent during the application or administration process."   *Lansing*, 2012 WL 1566354, at *4, citing *Costello*, 465 S.E.2d at 624 (1995).

In this case, Old White alleges the following facts which may be relevant to whether reasonable expectations of insurance coverage were created by HCC: (1) that Old White's application for insurance, filed with HCC, indicated that the 18th hole would average 175 yards and that the distances would be under the sole control of the PGA; (2) that Old White was "never advised" by HCC or other parties in this case that insurance was unavailable because Old White could not control the distance to the hole; (3) that HCC "never discussed" the issues of a distance limitation with Old White; (4) that neither the Underwriters, nor Lloyds, nor HCC provided Old White with a "copy of the policy conditions" requiring a 170-yard minimum; (5) that HCC "failed and refused to even discuss or notify Old White of changes … made to the insurance contract;" and (6) that the Underwriters, Lloyds, HCC and All Risks, "on their own," added the 170-yard minimum distance.   (Old White's Third Party Complaint, at ¶12-55.)

In light of these allegations, Old White has satisfactorily pled facts which could support a claim under the West Virginia doctrine of reasonable expectations.   Because HCC was the agent for the insurer in the transactions leading to the issuance of the policies at issue in this case, under West Virginia law, HCC may only be held liable for breach of contract if HCC's actions created an erroneous "reasonable expectation" of coverage for Old White. *Casto*, 2009 WL 2915132, at *1; *Keller*, 403 S.E.2d at 426-28.   The courts of West Virginia and this district have limited application of the reasonable expectations doctrine to cases where the Plaintiff has pled or demonstrated contractual ambiguity, or conduct or statements by the agent which create a

misperception of insurance coverage on the part of the insured.   *Lansing*, 2012 WL 1566354, at

*4; *Casto*, 2009 WL 2915132, at *1-2; *Robertson*, 475 S.E.2d at 120; *Hill*, 556 F.Supp.2d at 574-

75.   Old White's *Complaint* failed to allege any ambiguity in the policies which would support

application of the reasonable expectations doctrine.   However, the *Third Party Complaint* alleges

that HCC, together with All Risks, made changes to the policy application submitted by Old White,

and failed to provide Old White with either notice of these changes, or a copy of the relevant policy

conditions.   Old White alleges that it paid the premium for the policies to Bankers, and was

unaware of any modifications to the terms of the policies it set forth in its application. These

allegations, if true, could sustain Old White's claim for breach of contract against HCC under the

doctrine of reasonable expectations, because Old White could have believed, without any evidence

to the contrary, that any hole-in-one shots hit during the Greenbrier Classic would fall within the

175-yard average set forth in their application, and thus be covered under the policies.

   *2)   Old White's Negligence Claims*

   In moving to dismiss Old White's negligence claims, HCC makes two arguments.   HCC

first argues that these claims must be dismissed because HCC acted as an agent for Lloyd's and

the Underwriters, and therefore has no liability to Old White.   (HCC's Mem. in Supp. of Mot. To

Dismiss, at 7.)   HCC argues that the bar on agent liability which exists in West Virginia law for

breach of contract actions extends to actions sounding in tort.   (*Id*., citing *Fleming*, 250 F.Supp.2d

at 662.)   HCC therefore asserts that the negligence claims must be dismissed.   (*Id*. at 8.)

   Old White, of course, objects to dismissal of its negligence claim.   (Old White's Mem. in

Opp. to Mot. to Dismiss, at 10.)   Old White argues that *Fleming* relied upon then Chief Judge

Haden's opinion in *Benson v. Continental Ins. Co.*, 120 F.Supp.2d 593 (S.D.W.Va. Nov. 16, 2000)

(Haden, C.J.).   (*Id*.)   Old White further argues that Chief Judge Haden's ruling in that case, that the plaintiff was barred from recovering against the agent of an insurer under West Virginia law, was itself based not on a holding of the West Virginia Supreme Court of Appeals, but rather on a secondary source, namely, 42 Am.Jur.2d, *Insurance* §138, which may not have accurately reflected West Virginia law.   (*Id*.)[6]   Old White further argues that the doctrine of reasonable expectations requires preserving its tort claims, as well as its breach of contract claim.   (*Id*. at 12.) In asserting this argument, the Defendant relies upon *Costello*, *Keller*, and *Jarvis v. Modern Woodmen of America*, 406 S.E.2d 736, 740-43 (W.Va. 1991) (quoting Syl. Pt. 2, *Harless v. First Nat'l Bank of Fairmont*, 289 S.E.2d 692 (1982), in dicta, for the proposition that "[a]n agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship.") (*Id*. at 12-13.)

The Court finds, under West Virginia law, sufficient facts have been alleged here to support a tort claim against the agent.   In *Costello*, for example, the Supreme Court of West Virginia reviewed, *inter alia*, the failure of the trial court to instruct the jury concerning "the appellant's theory of reasonable expectations of insurance" on a tort claim against an insurance agent. *Costello*, 465 S.E.2d at 624.   The court noted that while "[t]he doctrine of reasonable expectations of insurance has been associated primarily with contract actions, rather than tort actions" (citing

---

6  Old White argues that the possibility that *Benson* did not accurately reflect West Virginia law was recognized by Judge Goodwin in *Mantz.* v. *St. Paul Fire and Marine Ins. Co.*, Civil Action No. 2-03-0087, Slip Op. [Doc. 37] at pp. 3-8 (March 6, 2003) (Goodwin, J.).   In that opinion, Judge Goodwin noted that in many states, agents of a disclosed principal could be held liable for torts committed while acting within the scope of their authority, and that the West Virginia Supreme Court of Appeals had reached a similar conclusion, albeit not in cases involving the agent of a disclosed insurer.   *Mantz*, at 5-6.   Judge Goodwin further noted the opinion of Chief Judge Haden in *Benson*, recognized the Chief Judge's reliance on 43 Am.Jur.2d, Insurance, §138, and noted that the treatise "does not acknowledge the presence of conflicting authority" on the question of agent liability in tort for actions arising from an insurance contract.   *Id*. at 7-8 n2.   Judge Goodwin therefore concluded that "the statement of law in the … treatise has not been adopted as uniformly as the language of the treatise would indicate," and declined to find that "there is no possibility that West Virginia might recognize agent liability in these circumstances."   *Id*.

*Trammel v. Prairie States Insurance*, 473 N.W.2d 460 (S.D. 1991), the plaintiff had brought claims for "… negligence …," and under the language of *Keller* ("[i]f the creditor, who is an agent for the insurance company, creates a reasonable expectation of insurance coverage, then both the insurance company and the creditor would be bound"), the court found the trial court "committed reversible error …" in refusing to instruct the jury on the doctrine of reasonable expectations. *Id.* at 353-54, quoting *Keller*, 403 S.E.2d at 430.[7]

HCC attempts to distinguish *Costello*, *Keller* and other unfavorable precedent on the basis that these cases involved a distinct factual scenario; specifically, a "specific statement or affirmative conduct of the agent of the insurer." (Def.'s *Reply*, at 10.) HCC therefore argues that the Court should rely upon *Benson*, *Fleming*, *Lansing*, and *Hill*, and find that the Old White's tort claims must be dismissed. *Benson*, *Fleming*, *Lansing*, and *Hill* all involved claims of fraudulent joinder in the context of a motion to remand, rather than the motions to dismiss presently before the Court. As the Court has previously noted, the standard for deciding a claim of fraudulent joinder in a motion to remand is distinct from the standard for a motion to dismiss: the party asserting fraudulent joinder must demonstrate either "[t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court",

---

[7] The Court notes the recent decision of Chief Judge Chambers in *Lewis v. State Farm and Cas. Co.*, 2015 WL 502035 (S.D.W.Va. Feb. 5, 2015) (slip op.) (Chambers, C.J.), where Chief Judge Chambers reviewed a defendant agent's claim, on a motion to remand, that the agent had been fraudulently joined. *Lewis*, 2015 WL 502035, at * 2. Chief Judge Chambers noted the holdings of *Keller* and *Costello*, but also noted the 1987 decision of the Supreme Court of West Virginia in *Robertson v. Fowler*, 475 S.E.2d 571, 574 (W.Va. 1996), where the court cited *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (1987) for the proposition that "[b]efore the doctrine of reasonable expectations is applicable to an insurance contract, there must be an ambiguity regarding the terms of that contract." *Id.* However, Chief Judge Chambers further indicated that "*Robertson* did not expressly overturn *Keller* and *Costello* …," and "the West Virginia courts have never held as much." *Id.* Thus, the Judge found that the "reasonable expectation of coverage exception … remains a murky area of state law." *Id.* The Judge reviewed the claims of the parties under the standard of review for fraudulent joinder, and found that based on the "alleged facts" (which, unlike Keller, did not include an assertion that the agent had made a specific misrepresentation about the insurance coverage), and the "unsettled state of insurance agent liability under West Virginia law," the court could not "conclude that [p]laintiffs have no possibility of a right to relief in state court." *Id.* at *3.

14

or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Lansing*, at *2, quoting *Mayes v. Rappaport*, 198 F.3d 457, 464 (4th Cir. 1999).   Although this standard is more favorable to plaintiffs than the standard for analyzing a motion to dismiss, the cases cited by HCC do not require the court to dismiss Old White's tort claims.   In *Lansing*, for example, this Court found that the Plaintiff had failed to set forth sufficient facts in the pleadings to survive a claim of fraudulent joinder.   *Id*. at *4.   This Court found that because the plaintiff in Lansing failed to "allege any facts to support a claim under the doctrine of reasonable expectations," including any "affirmative act," the plaintiff had no possibility of recovery under West Virginia law.   *Id*.   Here, the Plaintiff has alleged affirmative acts giving rise to reasonable expectations. Specifically, the Plaintiff claims that HCC, together with All Risks, made material changes to the policy conditions after receiving the application from Old White, failed to notify Old White about the changes, and failed to provide Old White with a copy of the final policy documents.   Thus, *Lansing* does not require dismissal of Old White's claims in this case.

*Benson*, *Fleming*, nor *Hill* command a different result.   *Benson* and *Fleming* each rely upon a broad rule prohibiting recovery for agents in the context of suits arising from an insurance contract, and do not discuss the doctrine of reasonable expectations.   Further, *Hill* does not help HCC in this context.   As noted on page 13, *supra*, Judge Chambers found in *Hill* that the doctrine of reasonable expectations did not extend "so far that an insurance agent may be held liable for the unilateral decision of an insurance provider, when no representations are made regarding that future decision."   *Hill*, 556 F.Supp.2d at 575.   Here, the plaintiff alleges that HCC and All Risks worked together to modify the terms of Old White's application, failed to notify Old White about

15

the changes, and failed to provide Old White with copies of the final policy documents.   Thus, *Hill* is not instructive in this case.

HCC further argues that Old White's tort claims must be dismissed under the "gist of the action" doctrine.   (HCC's Mem. in Supp. of Mot. to Dismiss, at 8.)   HCC claims that in West Virginia, the gist of the action doctrine bars claims in tort arising from the breach of a contract "unless the action in tort would arise independent of the existence of the contract."   (*Id*., quoting *Soyoola v. Oceanus Ins. Co*., 986 F.Supp.2d 695 (S.D.W.Va. Dec. 11, 2013) (Goodwin, J.).   HCC thus argues that "[all] of Old White's tort claims (bad faith, fraud and negligence) arise out of the contractual relationship surrounding the [policies] and are duplicative of the contract claim."   (*Id*.)

Old White rejects this position, and argues that its tort claims must survive HCC's motion to dismiss.   In so arguing, Old White claims that the "conduct, omissions, and representations" of HCC and other agents in this case have given rise to its tort claims, and that these claims are therefore "independent from the actual terms of the insurance policy."   (Old White's Resp. in Opp. to Mot. to Dismiss, at 15, citing *Soyoola v. Oceanus Ins. Co.*, 986 F.Supp. 695, 707-08 (S.D.W.Va. Apr. 18, 2008) (Chambers, J.); *Good v. American Water Works Co., Inc.*, 2015 WL 3506957, at *3-5 (S.D.W.Va. June 3, 2015) (Copenhaver, J.); *Gaddy Engineering Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 577 (W.Va. 2013) (per curium).)

The gist of the action doctrine provides that a tort claim will not "arise for breach of contract unless the action in tort would arise independent of the existence of the contract."   *Good*, 2015 WL 3506957, at *3, citing Syl. pt. 9, *Lockhart v. Airco Heating & Cooling, Inc.*, 567 S.E.2d 619, 620 (2002); *see also Covol Fuels No. 4, LLC v. Pinnacle Mining Co., LLC*, 785 F.3d 104, 110 (4th Cir. 2015) ("the gist of the action doctrine is meant to "prevent the recasting of a contract

claim as a tort claim") (citations omitted).   Courts of West Virginia and the Fourth Circuit have found that in West Virginia, the gist of the action doctrine applies where one of the following four factors is present:

> "(1) where liability arises solely from the contractual relationship between the parties; (2) where the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim."

*Id.*, quoting *Gaddy Engineering Co*., 746 S.E.2d at 577 (citations omitted).

HCC relies heavily on *Gaddy Engineering Co.*, *Good*, and *Chamberlaine & Flowers v. Smith Contracting,* Inc., 341 S.E.2d 414, 417 (1986), in support of its gist of the action argument. However, none of these cases involve the sort of tort claims at issue here where claims were brought against the agent of an insurer for conduct arising out of the issuance of an insurance policy, and conduct after the policy was issued.   In *Gaddy*, for example, an attorney and an engineering company entered into a verbal fee agreement, and the company brought claims in contract and tort based on a promise by the attorney to pay the company a certain percentage of recovered revenues.   *Gaddy*, 746 S.E.2d at 577.   The West Virginia Supreme Court of Appeals determined that the company's tort claims were barred by the gist of the action doctrine, because they "simply redoubled [the company's] efforts to try to prove" the existence of the clause.   *Id*. *Gaddy* is the type of case to which the gist of the action doctrine naturally applies.   This case is not.   The Court has sustained Old White's breach of contract claims based on Old White's pleading of sufficient facts to support a claim that HCC's conduct gave rise to a reasonable expectation that Old White was protected by insurance for losses sustained from the promotion. These claims are separate and distinct from Old White's tort claims as articulated in Count II of

17

Old White's *Third Party Complaint*, which are not based solely on the contractual relationship and where the breach of *implied* duty is not grounded in the contract, itself.   Here, Old White seeks recovery for negligence, resulting in reputational harm, litigations costs, and lost business.   (*See* Old White's Third Party Complaint, at ¶30-46.)   HCC's gist of the action argument should, therefore, fail, and Old White's tort claims may proceed.

   *3)  Old White's Claims for Common Law Bad Faith*

   HCC seeks to dismiss Old White's claims for common law bad faith by invoking agency principles.   (HCC's Mem. in Supp. of Mot. to Dismiss, at 9.)   Specifically, Old White argues that common law bad faith "is not an independent tort which can be established outside a contractual relationship."   (*Id.*, quoting *Grubbs v. Westfield Ins. Co.*, 430 F.Supp.2d 563, 569 (N.D.W.Va. 2006).   Because HCC did not enter into a contractual relationship with Old White, and merely acted as agent in procuring the policies, HCC argues that Old White cannot sustain its cause of action for common law bad faith.   (*Id.*)   Old White objects to that assertion, claiming that the doctrine of reasonable expectations, as set forth in West Virginia law, allows common law bad faith claims against the agent of an insurer to proceed where the aggrieved party shows that the "actions, omissions, or representations" of the agent "created a reasonable expectation of coverage."   (Old White's Resp. in Opp. to Mot. to Dismiss, at 16.)

   The West Virginia Supreme Court of Appeals has stated that "[t]he common law duty of good faith and fair dealing in insurance cases under our law runs between insurers and insureds and is based on the existence of a contractual relationship."   *Elmore v. State Farm Mut. Auto Ins. Co.*, 504 S.E.2d 893, 897 (W.Va. 1998).   Further, absent such a relationship, "there is simply nothing to support a common law duty of good faith and fair dealing on the part of insurance

18

carriers toward third-party claimants." *Id.* Under this rule, "third party claimants cannot bring common law bad faith causes of actions against insurance companies, because there is no contractual relationship between them." *Grubbs*, at 567, citing *Elmore*, 504 S.E.2d 893. Similarly, insurance agents are not subject to claims of common law bad faith, because agents do not have a contractual relationship under West Virginia law with the insured party. Syl. Pt. 2, *Shrewsbery v. National Grange Mutual Insurance Co.*, 395 S.E.2d 745 (W.Va. 1990). Further, the Court has identified no precedent which supports Old White's argument for an extension of the "reasonable expectations" doctrine to claims for common-law bad faith, nor has it directed the Court to any such precedent. There is no legal basis for Old White's common law bad faith claim, and the claim should be dismissed.

### 4) Old White's Statutory Bad Faith Claims

HCC seeks to dismiss Old White's claims for statutory bad faith, brought pursuant to the West Virginia Unfair Trade Practices Act (UTPA), W.Va. Code §33-1-4(9). This provision states, in relevant part, that:

> "(9) Unfair claim settlement practices -- No person shall commit or perform with such frequency as to indicate a general business practice any of the following: (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; … (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information; … (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; … (i) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured …"

W.Va. Code §33-1-4(9). The Supreme Court of West Virginia has held that the UTPA confers a right of action on private litigants, but that litigants must prove that a defendant had a "general business practice" of committing unfair claim settlement practices. *Barefield v. DPIC*

*Companies*, 600 S.E.2d 256, 264 (W.Va. 2004).   Proving a "general business practice" requires establishing "more than a single violation" of the statute, that the violations "arise from separate, discreet acts or omissions in the claim settlement," and that the violations "arise from a habit, custom, usage, or business policy of the insurer …" *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1, 13 (W.Va. 1996).

Here, HCC argues that Old White failed to sufficiently allege a "general business practice." As HCC indicates, "Old White enumerated various acts [in the Third Party Complaint] which it alleged constitute violations of the UPTA, but all of the allegations concern this one, isolated event involving the [policies]."   (HCC's Mem. in Supp. of Mot. to Dismiss, at 10.)   The Court agrees. Old White's Third Party Complaint does not in any way allege the type of "general business practice" contemplated by the UTPA and the relevant precedent.   Therefore, Old White's claim for statutory bad faith should be dismissed.[8]

  *5)  Old White's Fraud Claim*

HCC also seeks to dismiss Old White's claim for fraud.   HCC argues that Old White failed to satisfy the mandatory federal pleading standard for fraud claims, set forth in Federal Rule of Civil Procedure 9(b).   (HCC's Mem. in Supp. of Mot. to Dismiss, at 11.)   According to HCC, Old White's Third Party Complaint only alleges general allegations of fraud, to wit, that HCC (1) represented to Old White that it had "bound coverage" for the promotion; (2) made changes to the policies without advising Old White of the changes; and (3) fraudulently refused to pay claims under the policy.   (*Id.*)   According to HCC, these allegations fail to include the "time, place, or

---

[8]  In its *Response*, Old White did not challenge the assertion by HCC that it failed to plead a general business practice. Instead, Old White requested the "right to amend its third-party complaint to more adequately and sufficiently plead such matters."   (Old White's Resp. in Opp. to Mot. to Dismiss, at 16.)   Such a request must be filed under Rule 15(b)(2) of the Federal Rules of Civil Procedure.

contents" of any alleged false representations, and also fail to "identify any persons" who made such misrepresentations. (*Id*. at 12.)   In responding to HCC's argument, Old White characterizes its claim for fraud as one of fraudulent concealment. (Old White's Resp. in Opp. to Mot. to Dismiss, at 18.)   Old White then argues that courts have applied a "less stringent" pleading requirement to claims of fraudulent concealment, particularly where the alleged fraudulent concealment pertained to an omission.   (*Id*. at 19-20.).

The Court has reviewed the allegations contained within the Third Party Complaint in order to clarify the nature of Old White's fraud claim.   The most pertinent allegation is that HCC, among others, "negligently, intentionally, and/or fraudulently failed and refused to even discuss or notify Old White" of changes made to the policies after Old White submitted its application for insurance. (Old White's Third Party Complaint, at ¶35.)   Other allegations which are potentially relevant to a fraud claim include the allegation that HCC, among others, failed to "provide[] Old White with a copy of the policy conditions" prior to denying Old White's claim, and "without consultation before or during [the timeline of the promotion], added a 170 yard minimum distance to the contract and never communicated that change in the application to Old White."   (*Id*. at ¶26, 36.) Old White further alleges that it relied upon the representations of HCC and others, and that HCC's fraudulent conduct led to "financial damage."   (*Id*. at ¶45, ¶48.)

The elements of a cause of action for fraud, as established by the Supreme Court of Appeals of West Virginia are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false [and] that plaintiff relied on it and was justified under the circumstances in trying to rely on it; and (3) that he was damaged because he relied on it."   *Kessell v. Leavitt*, 511 S.E.2d 720, 751 (W.Va. 1998) (quoting Syl. Pt. 1, *Lengyel v. Lint*, 280

21

S.E.2d 66 (1981).   In West Virginia, claims for fraud can also be based on concealment of the truth, because "[f]raud is the concealment of the truth, just as much as it is the utterance of a falsehood."   *Id*. at 752, quoting *Frazier v. Brewer*, 43 S.E. 110, 111 (1902).   As noted by Chief Judge Chambers in *Belville v. Ford Motor Co.*, 60 F.Supp.3d 690, 697 (2014) ("*Belville II*"), the West Virginia law governing fraudulent concealment parallels the Restatement (Second) of Torts, which defines fraudulent concealment as:

> "One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering."

*Belville II*, 60 F.Supp. at 697, quoting Restatement (Second) of Torts, §550.

Generally, claims for fraud brought in federal court are subject to the requirements of Rule 9(b), which provides that when alleging "fraud or mistake," a plaintiff must do so using "specific detail, which must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b).   Under this standard, a plaintiff is required to "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."   *Beattie v. Skyline Corp.*, 906 F.Supp.2d 528, 537 (S.D.W.Va. 2012) (quoting *U.S. ex rel. Wilson v. Kellogg, Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citations omitted).   The same rule has been extended to claims for fraudulent concealment. *See, e.g., Belville v. Ford Motor Co.*, 13 F.Supp.2d 528, 546 (S.D.W.Va. 2014) ("*Belville I*") (finding that heightened pleading standard of Rule 9(b) applies to claims of fraudulent concealment).   However, courts in this district have also cautioned against the overzealous application of Rule 9(b).   For example, in *In Towns Hotels Ltd. Partnership v. Marriott Intern., Inc.*, 246 F.Supp.2d 469, 487 (S.D.W.Va. 2003) (Goodwin, J.), Judge Goodwin

quoted *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) for the proposition that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and 2) that plaintiff has substantial prediscovery evidence of those facts." *In Town Hotels*, 246 F.Supp. at 486 (quotations and citations omitted).

Here, Old White has characterized its claim as one of fraudulent concealment. In support of that claim, Old White has alleged that HCC, among other parties to this case, made changes to the terms of the policies, intentionally and/or fraudulently failed to notify Old White of these changes, and failed to provide Old White with the policy documents. Further, Old White has specifically claimed that it proposed policy language discussing an average yardage requirement of 175 yards noting that it had no control over the placement of the pins, and that this language was absent from the final terms of the policies at issue in this case. Old White has further alleged that it relied on HCC to its detriment, and that it suffered damages as a result of HCC's fraudulent conduct. Old White has, therefore, adequately pled a claim of fraudulent concealment under West Virginia law, and satisfied the particularity requirement of Rule 9(b).

## CONCLUSION

Wherefore, following thorough review and careful consideration, the Court **ORDERS** that *HCC Specialty Underwriters, Inc.'s Motion to Dismiss Third Party Complaint for Failure to State a Claim and Incorporated Memorandum of Law* (Document 27) be **GRANTED** as to Old White's claims under the West Virginia Unfair Trade Practices Act and for common law bad faith, and **DENIED** on all other grounds.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:     April 19, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA