IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

TALBOT 2002 UNDERWRITING
CAPITAL LTD, et al.,

     Plaintiffs,

v.            CIVIL ACTION NO.   5:15-cv-12542

OLD WHITE CHARITIES, INC.,

     Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed *HCC Specialty Underwriters, Inc.'s Motion to Dismiss Bankers Insurance LLC's Crossclaim and Incorporated Memorandum of Law* (Document 52), and *Third-Party Defendant All Risks, LTD's Motion to Dismiss Cross-Claim of Bankers Insurance, LLC* (Document 53) and *Memorandum of Law in Support* (Document 54).   The Court has also reviewed the *Responses in Opposition* (Documents 58 and 59) filed by Defendant Bankers Insurance, LLC, to each of these motions.   Finally, the Court has reviewed the *Reply* (Document 70) filed by HCC Specialty Underwriters, Inc., and the *Reply* (Document 71) filed by All Risks, Ltd.   For the reasons set forth herein, the Court finds that the motions to dismiss should be granted.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

A brief review of the claims giving rise to the present case is beneficial to effectively address the motions.   The Plaintiffs, Talbot 2002 Underwriting Capital Ltd., White Mountains Re Sirius Capital Ltd, and Markel Capital Limited (collectively, the "Underwriters"), brought suit against Old White on August 19, 2015.   (Pl.s' Complaint, at 1.)   The Underwriters seek a

declaratory judgment on obligations arising under prize indemnity insurance policies issued by the Underwriters to Old White that were in effect from June 30, 2015 through July 7, 2015.  (*Id*. at ¶10-11.)  The policies proposed to compensate Old White for any losses incurred in a "hole-in-one" contest offered by the Greenbrier Resort and hosted on the 18th hole of the Old White TPC golf course during the Greenbrier Classic and Pro-Am, which took place from July 1, 2015 through July 5, 2015.  (*Id*. at ¶12.)  Under the terms of a promotion offered by the Greenbrier Resort, the Hole-In-One Fan Jackpot (the "promotion"), the Greenbrier promised to pay fans seated in the grandstands $100 for the first hole-in-one, $500 for the second hole-in-one, and $1,000 for the third.  (*Id*. at ¶18-21.)  To insure against these payouts, the policies pledged to pay Old White $150,000 for the first hole-in-one made by a golfer, $750,000 for the second hole-in-one, and $1,400,000 for the third, for a total aggregate insurance value of $2,300,000.  (*Id*. at ¶13-14.)  Among the exclusions and limitations in the policies was a provision requiring that the 18th hole be at least "170 yards from the tee."  (*Id*. at ¶14.)  During the tournament, two golfers hit a hole-in-one on the 18th hole.  (*Id*. at ¶22.)  The owner of the Greenbrier Resort, James Justice, allegedly paid fans seated in the grandstands "a total of roughly $200,000."  (*Id*. at ¶24.)  According to the *Complaint*, both holes-in-one were hit from a distance of 137 yards.  (*Id*. at ¶23.)

HCC served as the representative and agent of the Underwriters in issuing the policy.  (*Id*. at ¶29.)  Old White enlisted Bankers Insurance, LLC ("Bankers") to procure the coverage, and Bankers requested that All Risks serve as broker.  (*Id*. at ¶27-28.)  In their complaint, the Underwriters alleged that Old White, in seeking insurance for the Hole-In-One event, indicated that the yardage on the 18th hole was "[a]pprox 175 [a]verage," and warranted that "[t]he [i]nsured Hole-In-One must be taken from a distance of at least 150 yards for all competitors."  (*Id*. at ¶32.)

HCC and All Risks are alleged to have negotiated the final policy language requiring the 18th hole to be at least 170 yards from the tee.   (*Id*. at ¶40-43.)   While the policy was issued, according to the Underwriters, "neither Old White nor any of its agents" ever paid the required premium payments.   (*Id*. at ¶48.)   Old White subsequently made a demand for $900,000 in insurance coverage on the policy.   (*Id*. at ¶24.)   Underwriters subsequently brought suit for declaratory relief on various claims, including, *inter alia*, (1) that the policy at issue in this case did not provide coverage for Old White's losses, based on the failure to satisfy minimum yardage requirements; (2) that the Underwriters may rescind the policy based on material and/or incorrect statements by Old White; (3) that coverage was excluded based on material deviation in the information provided to the Underwriters by Old White; (4) that coverage is excluded based on Old White's failure to pay the policy premium; and (5) that the policy was void based on the failure of Old White and the Underwriters to reach a meeting of the minds as to a material term for the policy.   (*Id*. at ¶53-92.)

On September 11, 2015, Old White brought a *Third Party Complaint* (Document 14) against HCC, All Risks, and Underwriters at Lloyd's London ("Lloyd's").   Therein, Old White alleges that HCC and All Risks acted as agents for Lloyd's in procuring the insurance policies at issue in this case.[1]   (Old White's Third Party Complaint, at ¶1-9.)   Old White claimed that in applying for these policies, Bankers and Old White "explained all the conditions" for the promotion, including "the fact that Old White had no control over the distance the pins were set because the PGA has sole and exclusive control over the pins."   (*Id*. at ¶13.)   Specifically, Old White alleged that it placed in the application the following language:

---

[1]  The policy numbers for these policies, per Old White's *Third Party Complaint*, are L009216, L009217, and L009218.   (Pl.'s Third Party Complaint, at ¶6.)

"Old White Charities requests hole-in-one coverage for all five days of their tournament.  The hole to be considered for Hole-in-One coverage is #18 which plans an average of 175 yards.   The pins (as always in a PGA tour event,) will be set in a new location each morning of the Greenbrier Classic by the PGA.  The insured has no idea nor will have any influence as to where the pins will be set."

(*Id*. at ¶14.)   Old White claimed that it was "never advised" by HCC, All Risks, or Lloyd's that insurance was unavailable due to its inability to control the distance.  (*Id*. at ¶15.)   According to Old White, it was "contacted by Bankers" on June 26, 2015, and informed that the insurance was bound for the promotion, and it "overnighted the premium of $112,684.12 to Bankers," after which it was "told the insurance was in effect for the event."  (*Id*. at ¶16-17.)   Old White claimed that the premium check was paid by Bankers "within the time due."  (*Id*. at ¶18.)   After two golfers hit holes-in-one during the Greenbrier Classic, Old White claimed that the Underwriters, All Risks "and/or HCC all wrongfully refused to pay the claims, even though they had bound the coverage and accepted the premium without advising Old White as to any changes in the application."  (*Id*. at ¶23.)   Old White claimed that it is "entitled to the insurance proceeds," and that "[t]he first time Old White was aware of the alleged 170 yard limit was when they received the reservation of rights letter from HCC."  (*Id*. at ¶26.)

On August 26, 2015, Bankers moved to intervene as a defendant in this action.  Bankers argued that because it acted as the insurance broker for Old White in procuring the policies at issue in this litigation, it had a vested interest in the outcome of the litigation, as a declaration by the Court that no coverage existed for the promotion could conceivably result in an action for indemnification against Bankers.  (Bankers Mot. to Intervene, at 2) (Document 7).   The Court granted the motion to intervene in a *Memorandum Opinion and Order* (Document 33) issued on October 30, 2015.

On November 17, 2015, Bankers filed its *Answer and Crossclaims* (Document 43). Therein, Bankers asserts five counts against HCC and All Risks, all arising under West Virginia law.  The first two counts sound in contract.  Count I claims that Bankers tendered the premium payment for the policies to All Risks, that All Risks accepted the premium on behalf of HCC and the Underwriters, and that All Risks failed to pay the premium to HCC, thus breaching its obligations under the policies.  (Answer and Crossclaims, at ¶17-21.)  Count II also alleges breach of contract, and claims that HCC and All Risks entered into an agreement with Bankers to procure insurance for Old White in exchange for insurance premiums, that Bankers accepted the offer, and that HCC and All Risks violated the agreement by "negotiating alleged conditions that contradict the language of Old White's application for coverage," resulting in damage to Bankers. (*Id*. at ¶22-29.)  Count III alleges tortious interference, on the grounds that HCC and All Risks "intentionally interfered" in the business relationship between Bankers and Old White, by "attempting to negotiate terms and conditions" of the policies without authorization, and failing to disclose the subsequent modifications to policy language, resulting in damage to the relationship between Bankers and Old White.  (*Id*. at ¶30-37.)  Count IV alleges fraud, and claims that All Risks and/or HCC made material misrepresentations about the scope of coverage under the policies, resulting in harm to Bankers and Old White.  (*Id*. at ¶38-43.)  Count V alleges that HCC and All Risks were negligent in making changes to Old White's application for insurance, and that HCC and All Risks negligently failed to inform Old White about the minimum distance requirement contained in the revised policy language.  (*Id*. at ¶44-50.)

On December 18, 2015, HCC and All Risks separately moved to dismiss Bankers' crossclaims.  Bankers responded to both motions on January 11, 2016.  HCC filed its reply on

January 19, 2016, and All Risks filed its reply on January 20, 2016.   The motions to dismiss are, therefore, ripe for review.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.   *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).   "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)"   *Id.*   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint."   *Erikson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[] all reasonable factual inferences from those facts in the plaintiff's favor."   *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.   *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).   Furthermore, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."   *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because courts] 'are not bound to accept as true a legal conclusion couched as a factual

allegation.'"   *Iqbal,* 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570.)   In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.)   In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief."   *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557.)   "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal,* 556 U.S. at 679.

## DISCUSSION

### A.   *Bankers' Breach of Contract Claims against HCC*

HCC first moves to dismiss Bankers' claims for breach of contract, which are found in Counts I and II of Bankers' counterclaim.[2]   HCC makes three arguments in support of this motion.

---

[2]  HCC makes one universal objection to all of the crossclaims raised by Bankers – that the claims are premature and not ripe for adjudication.   (HCC's Motion to Dismiss, at 6-7.)   Specifically, HCC claims that Bankers has only one interest in this action – the potential losses arising from an indemnification claim by Old White, if the Court determined that no coverage existed under the policies for Old White's losses during the promotion.   (*Id.*)   HCC argues that until such time as this Court rules on the Underwriters' action for declaratory judgment, the claims by Bankers are premature, and would constitute an impermissible advisory opinion.   (*Id.*)   Bankers rejects this argument, and claims that its crossclaims are ripe for adjudication, because the "conduct and actions" cited in the crossclaims "have already occurred and are not contingent on some contingent future event."   (Bankers' Response, at 3.)   While Bankers may ultimately face an action for indemnification by Old White, that action is not the basis for the claims asserted here. Rather, these claims address conduct which has already occurred, and losses which allegedly resulted therefrom. Thus, the Court finds, without making any determination as to the merits, that the claims are ripe for adjudication.

First, HCC argues that the breach of contract claims in Count I are "fundamentally flawed" because Bankers was not a party to the contract at issue in this case.   (HCC's Motion to Dismiss, at 7.)   In particular, while acknowledging that Bankers alleged a contract between Old White, on the one hand, and All Risks and HCC, on the other, HCC argues that Bankers "nowhere alleges that *it* is a party to this contract."   (*Id*. at 8.)   As a result, HCC claims that Bankers "has no contract rights to enforce."   (*Id*.)   HCC makes a similar argument as to Count II, claiming that Bankers' "acceptance of an offer as an agent of Old White" failed to "render Bankers a party to the contract," and that the breach of contract claim should be dismissed.   (*Id*. at 9.)

Second, HCC argues that the breach of contract allegations are "nothing more than legal conclusions," and as such, are insufficient to survive a Rule 12(b) motion. (*Id*. at 8.)   Specifically, HCC argues that in Count I, Bankers "failed to allege that HCC owed it any contractual obligations," and instead, merely "alleged that it was damaged by some undescribed conduct of HCC."   (*Id*.)   Thus, because "Bankers failed to allege sufficient factual material," HCC argues that Count I must be dismissed.   Third, HCC argues that Bankers' breach of contract claims must fail because HCC has no personal liability for the conduct of the Underwriters.   (*Id*. at 9.)   HCC acknowledges that it acted as agent for the Underwriters in connection with the issuance of the policies, but argues that because it acted strictly within its capacity as agent, it is immune from breach of contract claims under West Virginia law for any damages arising from the policies.   (*Id*. at 9-10, citing *Fleming v. United Teachers Assoc. Ins. Co*., 250 F.Supp. 2d 658, 662 (S.D.W.Va. 2003).   Because "any of the allegations against HCC" arise from "[HCC's] capacity as agent of Underwriters," and because there are "no allegations that HCC acted outside the scope of its

authority" in the events "giving rise to the contract claims at issue," HCC argues that these claims must be dismissed.   (*Id*. at 10.)

Bankers responds to these arguments by reaffirming the validity of its crossclaims. Bankers first argues that it has adequately alleged a contract.   (Bankers' Response, at 4.)   Bankers argues that it "had an agreement with All Risks and HCC that they would procure/provide the Policy for Old White in exchange for specified premium payments."   (*Id*., citing Answer and Crossclaim, at ¶18-19, 23.)   Further, Bankers argues that HCC owed contractual obligations to Bankers, by virtue of employing All Risks to act as agent for receiving the premium payment from Bankers.   (*Id*.)   Thus, Bankers argues that it is "seeking to hold HCC responsible for its conduct in contradiction of its duties to Bankers pursuant to the agreement between the parties."   (*Id*. at 5.)   Regarding HCC's claim that as agent for Underwriters, it is immune from liability for the actions of a disclosed principal, Bankers argues that the West Virginia doctrine of reasonable expectations allows an action against the agent of an insurer to proceed where the agent "creates a reasonable expectation" of insurance coverage.   (*Id*., citing *Costello v. Costello*, S.E.2d 620 (W.Va. 1995); *Keller v. First Nat'l Bank*, 403 S.E.2d 424 (W.Va. 1991).   Bankers argues that because HCC "never approached Bankers regarding additional information needed" for the application, or advised Bankers about "any conditions that would impose limitations on the distance of the insured hold-in-one," HCC "reasonably led Bankers to expect that they would obtain insurance coverage" for Old White.   (*Id*. at 6.)   Thus, Bankers argues that HCC created a "reasonable expectation" of coverage under West Virginia law.   (*Id*.)

The Court finds that Bankers has failed to assert a valid breach of contract claim against HCC, and that these claims must be dismissed.   To support a claim for breach of contract under

West Virginia law, a plaintiff must allege sufficient facts to support the following elements:   a valid enforceable contract, that the plaintiff has performed under the terms of the contract, that the defendant has breached or violated duties or obligations under the contract, and that the plaintiff has been injured as a result.   *Executive Risk Indem., Inc. v. Charleston Area Medical Center, Inc.*, 681 F.Supp.2d 694, 714 (S.D.W.Va. 2009), citing 23 WILLISTON ON CONTRACTS §63:1 (Richard A. Lorde, ed. 4th ed. West 2009).   "The fundamentals of a legal 'contract' are competent parties, legal subject-matter, valuable consideration, and mutual assent."   *Fifth Third Bank v. McClure Properties, Inc.*, 724 F.Supp.2d 598, 603 (S.D.W.Va. July 9, 2010), citing Syl. Pt. 9, *Ways v. Imation Enterprises Corp.*, 589 S.E.2d 36 (2003).   Here, Bankers has alleged an "agreement" with HCC to forward the premium payment for the policies from Old White to All Risks and/or to Underwriters, in exchange for which the relevant policies would be issued.   Absent from the pleadings is any suggestion of consideration for this purported contractual obligation.   Even if the Court were to accept the tenuous proposition that there was an agreement between Bankers and HCC to, in effect, adhere to their respective obligations as agents for Old White and Underwriters, bargained-for consideration between Bankers and HCC would be required to render such an agreement a legally binding contract.   Because Bankers has failed to plead any such consideration, its breach of contract claim should be dismissed.[3]

---

[3] Because Bankers failed to adequately plead a claim for breach of contract, the Court is not required to address Bankers' arguments concerning the doctrine of reasonable expectations.   However, the Court notes that all of the case law cited by Bankers in support of that argument, including *Keller* and *Costello*, involve actions brought by an insured party against an insurer and an insurance agent.   Here, Bankers was not the insured party.   Rather, Bankers was the agent and broker to the insured party, Old White.   Nothing in the relevant case law suggests that the doctrine of reasonable expectations, which is designed to remedy situations where an agent's conduct creates a reasonable expectation of coverage for an insured party, should extend to an agent for an insured, who is not party to any contract with the relevant insurer.

### B.   Bankers' Breach of Contract Claims against All Risks

All Risks moves to dismiss both breach of contract claims raised by Bankers.[4]   As to Count I, All Risks argues that the allegations, which involve a purported "obligation to convey prompt payment of the … premium to [the Underwriters]" and losses resulting from All Risks' failure "to tender such premium," are insufficient to state a claim for relief.   (All Risks' Mem. in Supp. of Mot. to Dismiss, at 3.)   More precisely, All Risks argues that because in Count I, Bankers is "complaining about conduct between individuals to which it is not a party," and injuries resulting therefrom, the Count fails to satisfy the standard of *Twombly* and must be dismissed.   (*Id*.)   As to Count II, All Risks argues that there is "no information" as to "any contract that was allegedly breached," and that "[t]he contract referenced is between [the Underwriters] and Old White."   (*Id*. at 3-4.)

Bankers responds to All Risks' by asserting that its claims are sufficient to survive a Rule 12(b) motion.   As to Count I, Bankers argues that the claim specifically "alleges that Bankers tendered the premium payment to All Risks who had an obligation to convey the premium to HCC and [the Underwriters], but failed to do so."   (Bankers' Response, at 3.)   Thus, Bankers argues that All Risks' "conduct caused specific and particularized damages which Bankers seeks to

---

[4]  The Court notes that All Risks argues at length in its *Response* that Bankers lacks standing to bring crossclaims, because it has not sustained an "injury in fact."   All Risks argues that the sole basis on which this Court permitted Bankers to intervene was the potential for Bankers to face an indemnification action by Old White.   (All Risks' Mem. in Supp. of Mot. to Dismiss, at 4.)   All Risks argues, in a more nuanced variation of the ripeness argument set forth by HCC, that at this point in the litigation, Bankers has not established, nor can Bankers show, an injury in fact. (*Id*.) Instead, All Risks argues that despite Bankers' assertions to the contrary, Bankers has "failed to assert a concrete and particularized invasion of a legally protected interest."   Therefore, All Risks argues that the Court must dismiss Bankers' claims for failing to meet the standing requirements of Article III of the United States Constitution.   (Id. at 4-5.)   The Court disagrees.   In granting intervention, the Court determined that Bankers had a legally protectable interest which was at issue in this litigation, and intervention was therefore required.   After allowing Bankers to intervene as a Defendant in this case, Bankers asserted claims against Third-Party Defendants HCC and All Risks, which invoke interests distinct from those cited as the basis for intervention.   As a result, the Court finds that dismissal is not required on the basis of standing.

redress …" (*Id.*)   As to Count II, Bankers argues that it properly alleges "a contract with All Risks to procure/provide the policies in question," and that All Risks breached the contract by negotiating policy language without consulting Bankers, resulting in a denial of coverage to Old White.   (*Id.*) Thus, Bankers argues that its contract claims against All Risks must proceed.   (*Id.*)

Bankers' breach of contract claims against All Risks must fail for the same reasons as its claims against HCC.   While Bankers has alleged an "agreement," the agreement, read in the light most favorable to Bankers, amounts to nothing more than assurances by Bankers and HCC to perform their respective obligations as agents of Old White Underwriters.   Nowhere has Bankers alleged a written or oral contract between itself and All Risks with separate consideration.   Absent such contract and consideration, Bankers has failed to allege an independent contract sufficient to sustain their breach of contract claims.

### C.   Bankers' Tortious Interference Claims Against HCC

HCC argues that Bankers' claim for tortious interference must fail because Bankers fails to allege "a link between HCC's conduct and the alleged harm to Bankers."   (HCC's Motion to Dismiss, at 11.)   HCC admits that Bankers has adequately alleged a business relationship with Old White, but has failed to "allege how any of the alleged conduct by HCC" interfered with that relationship.   (*Id.*)   Pointing to Bankers' allegation that HCC "attempt[ed] to negotiate terms and conditions of the [p]olic[ies]," and "exchanged emails regarding proposed policy language," HCC argues that its actions "simply constituted the normal steps parties to a proposed contract take to consummate such an agreement," and are not actionable.   (*Id.* at 13.)

Not surprisingly, Bankers disagrees with HCC on the viability of its tort claim.   Bankers argues that under Rule 8 of the Federal Rules of Civil Procedure and the pleading standard set

forth in *Twombly*, it must set forth enough facts to "raise a reasonable expectation that discovery will reveal evidence to support the claims."   (Bankers' Response, at 6-7, citing *Twombly*, 550 U.S. at 566.)   Bankers notes that in its crossclaim, it alleged that because of the "condition in the [p]olic[ies] tortuously negotiated by HCC without authority from Bankers or Old White," the Underwriters "seek a declaratory judgment against Old White" and have "refused to pay Old White's claims."   (*Id*. at 7, citing Bankers' Answer and Crossclaim, at ¶28, 32-36.)   Thus, Bankers argues that it has adequately plead a claim for tortious interference.   (*Id*.)

To support a claim for tortious interference, the Plaintiff must, at a minimum, establish the existence of a contractual or business relationship or expectancy, an intentional act of interference by a party outside that relationship or expectancy, proof that the interference caused the harm sustained, and damages.   *Hatfield v. Health Management Assoc. of West Va*., 672 S.E.2d 395, 404 (W.Va. 2008).   Here, it is indisputable that Bankers has adequately plead a business relationship with Old White.   It is also indisputable that HCC was not a party to that relationship.   Bankers has alleged, in pleading an intentional act of interference, that HCC negotiated material changes to the language of Old White's application for insurance with All Risks, without informing Bankers of the negotiations or the resulting modifications in sufficient time for Bankers to procure alternative insurance coverage.   In support of this allegation, Bankers alleges that HCC and All Risks exchanged emails and otherwise negotiated the policy conditions without informing Bankers or Old White.   Bankers also alleges that HCC and All Risks acted "intentionally."   (Answer and Crossclaims, at ¶50.)

The Court finds this allegation insufficient to survive a motion to dismiss.   Read in the light most favorable to the Plaintiff, the alleged misconduct does not allow an inference that HCC

and/or All Risks sought to interfere with the business relationship between Old White and Bankers. Nor do the facts alleged allow an inference that HCC and/or All Risks sought to undermine Bankers' role as broker to Old White.   Moreover, Bankers claim also fails as to the issue of damages.   Bankers merely alleges that it has "incurred and will continue to occur significant damages." (*Id*. at ¶37.)   Bankers provides no additional support for this allegation, and fails to directly link these damages to the purported interference.   In other words, Bankers provides no factual basis to link the allegedly tortious conduct to any damages.   Conclusory statements of injury, without more, do not satisfy the pleading standards set forth by *Twombly* and relevant Fourth Circuit precedent.   Therefore, Bankers' tortious interference claim against HCC should be dismissed.

### D.   Bankers' Tortious Interference Claims against All Risks

In moving to dismiss Bankers' claim of tortious interference, All Risks argues that the claim, even "if accepted as true," is insufficient to establish that "relief is plausible on its face." (All Risks' Mem. in Supp. of Mot. to Dismiss, at 4.)   Bankers disputes this assertion, and argues that under the law of West Virginia, it has more than adequately pled a claim for tortious interference with a contract or business relationship.   (Bankers' Response, at 3, citing *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 314 S.E.2d 166 (W.Va. 1983).)   More specifically, Bankers argues that it "identified specific misconduct by All Risks demonstrating intentional interference," such as "All Risks' negotiation of terms and conditions of the [policies] without Bankers' authority."   (*Id*. at 3-4.)

Bankers' tortious interference claim against All Risks fails for the same reasons as the claim against Bankers.   Bankers has clearly pled a business relationship, but has failed to

14

sufficiently allege intentional interference in that relationship by All Risks.   Moreover, nowhere does Bankers make any causal link between the alleged tortious interference and the claimed harm, nor does Bankers provide any facts whatsoever showing that the business relationship between Old White and Bankers has actually suffered as a result of the alleged tortious conduct.   Thus, Bankers claim should be dismissed.

   E.   *Bankers' Negligence Claims Against HCC*

   As to the negligence claim raised by Bankers, which HCC classifies as a claim for negligent misrepresentation, HCC argues that the claim should be dismissed because West Virginia law support such claims only if there is a "special relationship" between the parties.   (HCC's Mot. to Dismiss, at 15, citing *Tinsley v. OneWest Bank*, FSB, 4 F.Supp. 3d 805, 839 (S.D.W.Va. 2014) (Chambers, C.J.).   HCC argues that Bankers has failed to allege "any type of special relationship between itself and HCC," and absent such a relationship, Bankers' claim should fail.   (*Id*. at 15.) In response, Bankers argues that it has alleged sufficient facts to sustain a cause of action for negligence.   (Bankers' Response, at 9.)   Bankers argues that the crossclaim "alleges that HCC owed a duty to Bankers pursuant to the agreement between the parties and their relationship as elsewhere pled in the [crossclaim]," and that the "duty as alleged is sufficient under applicable law."   (*Id*., citing *HSBC Bank USA, Nat. Ass'n v. Resh*, 2013 WL 312871, at *10 (S.D.W.Va. Jan 25, 2013) (Chambers, C.J.).)

   In West Virginia, a party making a claim for negligent misrepresentation must allege that a defendant with a duty to provide accurate information made a false or incorrect statement, resulting in damages.   *HSBC*, 2013 WL 312871, at *10, citing *Folio v. City of Clarksburg*, 655 S.E.2d 143, 151 (W.Va. 2007).   It is clearly established under West Virginia law that claims for

15

negligence and/or negligent misrepresentation arising from a contractual relationship require the plaintiff to establish the existence of a "special relationship" between the parties. *Tinsley v. OneWest Bank, FSB*, 4 F.Supp.3d 805, 839 (S.D.W.Va. 2014), citing *O'Brien v. Quicken Loans, Inc.*, 2013 WL 2319248, at *10 (S.D.W.Va. May 28, 2013) (Copenhaver, J.)   Here, the basis for Bankers' negligence claims clearly arises from a purported contract with HCC and/or All Risks, as Bankers alleges that "All Risks and/or HCC offered to procure/provide the [policies] for Old White in exchange for specified premium payments," and "Bankers accepted All Risks' and or HCC's offer on behalf of Old White."   (Answer and Crossclaim, at ¶18.)   Bankers failed to set forth any other relationship giving rise to any duty on the part of HCC.   Thus, because the basis for Bankers' negligent misrepresentation claim is the purported contract between Bankers and HCC, under West Virginia law Bankers must allege a special relationship for the claims to survive. Bankers has failed to do so.   Indeed, the Court finds that the relationship between Bankers and HCC was that of two brokers representing different clients in an arms-length transaction, and incorporated no special relationship or unique legal duties.   Thus, the Court finds that the claim must be dismissed.   Further, absent a special relationship between Bankers and HCC, to the extent that HCC did owe a duty to disclose material information regarding the alleged negotiations and revisions to the language of the policies, that duty was not owed to Bankers, but rather to the insured party in this case, Old White.

### F.   Bankers' Negligence Claims Against All Risks

All Risks also argues that the claims for negligence raised by Bankers must be dismissed. In support, All Risks notes that Bankers was not "a party to the insurance contract" between Old White and the Underwriters.   (All Risks' Mem. of Law in Supp. of Mot. to Dismiss, at 4.)   All

Risks then notes that Bankers "is not a party to the insurance contract," and that "[o]ther than blanket allegations regarding negligence, there is no premise for a negligence claim as Bankers cannot establish damages …" (*Id.*)   Bankers rejects this argument, claiming that its absence from the contract between Old White and All Risks "does nothing" to defeat its claim.   (Bankers' Response, at 3-4.)   Rather, Bankers argues that All Risks "had a duty to exercise reasonable skill, care, and diligence to procure the insurance coverage requested …," and that Bankers sufficiently "alleged that All Risks breached that duty by changing Old White's application without informing Bankers or Old White."   (*Id.* at 4.)   Like the negligence claims against HCC, this claim against All Risks must also fail.   Bankers alleges no special relationship with All Risks outside the scope of the purported contract, and no other legal basis for a duty.   Absent an adequately pled duty, the negligence claim against All Risks should be dismissed.

### G.   *Bankers' Fraud Claims Against HCC and All Risks*

HCC and All Risks finally argue that the fraud claims raised by Bankers must be dismissed. HCC argues that Bankers' claim fails to satisfy the heightened pleading standard for fraud claims in federal court set forth by Rule 9(b) of the Federal Rules of Civil Procedure.   (HCC's Mot. to Dismiss, at 14; All Risks' Mem. in Supp. of Mot. to Dismiss, at 6.)   HCC notes that Bankers alleges an omission or misrepresentation – that HCC "represented to Old White and Bankers that the specified hole-in-one would be insured pursuant to the information provided in Old White's application for insurance …," but argues that Bankers failed to "plead the time, place, or contents of the alleged false representations," and also failed to "identify any person making such misrepresentations."   (*Id.* at 14, citing Bankers' Answer and Crossclaim, at ¶39.)   Bankers responds by arguing that it has adequately pled all of the elements of fraud, and therefore, has

provided "sufficient information to allow HCC to prepare a defense for trial."   (*Id*. at 9, citing *Belville v. Ford Motor Co.*, 13 F.Supp.3d 528, 543 (S.D.W.Va. 2014).   Meanwhile, All Risks notes that while Bankers alleged that "Old White and Bankers relied upon All Risks' representations that the hole in one would be insured …," Bankers provides "no details surrounding the alleged misrepresentations … including the identity of any persons making such representations."   (All Risks' Mem. in Supp. of Mot. to Dismiss, at 6.)   As such, All Risks argues that the fraud claim is "based upon labels and conclusions," that Bankers has not suffered any damages, and that the fraud claim must, therefore, be dismissed.   (*Id*.)   Bankers disputes these arguments, and claims that it has adequately pled a cause of action for fraud.   (Bankers' Response, at 5.)   Bankers also argues that the allegations are "sufficient" to allow All Risks to prepare a trial defense, and should, therefore, survive a Rule 12(b) motion.   (*Id*., citing *Belville*, 13 F.Supp.3d at 543.)

The elements of a cause of action for fraud, as established by the Supreme Court of Appeals of West Virginia are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false [and] that plaintiff relied on it and was justified under the circumstances in trying to rely on it; and (3) that he was damaged because he relied on it."   *Kessell v. Leavitt*, 511 S.E.2d 720, 751 (W.Va. 1998) (quoting Syl. Pt. 1, *Lengyel v. Lint*, 280 S.E.2d 66 (1981).   In West Virginia, claims for fraud can also be based on concealment of the truth, because "[f]raud is the concealment of the truth, just as much as it is the utterance of a falsehood."   *Id*. at 752, quoting *Frazier v. Brewer*, 43 S.E. 110, 111 (1902).   As noted by Chief Judge Chambers in *Belville v. Ford Motor Co.*, 60 F.Supp.3d 690, 697 (2014) ("*Belville II*"), the

West Virginia law governing fraudulent concealment parallels the Restatement (Second) of Torts, which defines fraudulent concealment as:

> "One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering."

*Belville II*, 60 F.Supp. at 697, quoting Restatement (Second) of Torts, §550.

Generally, claims for fraud brought in federal court are subject to the requirements of Rule 9(b), which provides that when alleging "fraud or mistake," a plaintiff must do so using "specific detail, which must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b).   Under this standard, a plaintiff is required to "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."   *Beattie v. Skyline Corp.*, 906 F.Supp.2d 528, 537 (S.D.W.Va. 2012) (quoting *U.S. ex rel. Wilson v. Kellogg, Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citations omitted).   The same rule has been extended to claims for fraudulent concealment.   *See, e.g.*, *Belville*, 13 F.Supp.2d at 546 (finding that heightened pleading standard of Rule 9(b) applies to claims of fraudulent concealment).   However, courts in this district have also cautioned against the overzealous application of Rule 9(b).   For example*, in *In Towns Hotels Ltd. Partnership v. Marriott Intern., Inc.*, 246 F.Supp.2d 469, 487 (S.D.W.Va. 2003), Judge Goodwin quoted *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) for the proposition that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."   *In Town Hotels*, 246 F.Supp. at 486 (quotations and citations omitted).

Here, Bankers has made claims for fraudulent concealment.   In support of those claims, Bankers has alleged that HCC and All Risks made changes to the terms of the policies, intentionally, and/or fraudulently failed to notify Bankers of these changes, and failed to provide Bankers with a copy of the revised policy documents in sufficient time for Bankers and Old White to procure alternative insurance coverage for the promotion.   More specifically, Bankers alleges that HCC and All Risks "represented … that the specified hole-in-one would be insured pursuant to the information provided in Old White's application for insurance …," that it "relied on [these] representations … and in light of such reliance, did not seek additional coverage from other companies," that such reliance was "justified because they were not advised by All Risks or HCC that a distance limitation would be needed and were not contacted regarding any proposed terms …," and that as a result of this allegedly fraudulent conduct, the Underwriters "denied claims" on the policies in this case, damaging Bankers and Old White.   (Bankers' Answer and Crossclaims, at ¶38-43.)   Bankers has, therefore, adequately pled the first two elements of a fraud claim: a fraudulent act by All Risks and HCC, and reliance.   However, Bankers has failed to adequately allege damages.   Here, Bankers merely asserts that it was "damaged."   Bankers provides no additional facts to support this allegation.   Without more, these allegations fail to exceed the plausibility standard set forth by the Supreme Court in *Twombly* and *Iqbal*.   Under *Twombly*, dismissal does not require the Court to find that there is "no set of facts" under which the claimant may be entitled to relief.   *Twombly*, 550 U.S. at 561.   Rather, *Twombly* allows the Court to sustain a claim even if "it strikes a savvy judge that actual proof of these facts is improbable …" *Id*. at 554.   To sustain a claim, the Court must merely find that a claimant has "nudged" a claim "across the line from conceivable to plausible."   *Iqbal*, 556 U.S. at 680, quoting *Twombly*, 550 U.S. at

570.   Bankers' fraud claim fails to meet this standard.   Bankers sets forth no facts supporting any harm to *itself* resulting from the alleged fraudulent conduct of HCC and All Risks.   Bankers pleads facts which would allow the Court to infer that the allegedly fraudulent conduct harmed Old White, as the insured party on the policies at issue in this case.   However, the facts do not allege any harm, or support any inference of harm, to Bankers, as agent and broker for Old White.   Without more, Bankers' fraud claims against HCC and All Risks should be dismissed.

## CONCLUSION

Wherefore, following thorough and careful consideration, the Court **ORDERS** that *HCC Specialty Underwriters, Inc.'s Motion to Dismiss Bankers Insurance LLC's Crossclaim* (Document 52) be **GRANTED,** that *Third-Party Defendant All Risks, LTD's Motion to Dismiss Cross-Claim of Bankers Insurance, LLC* (Document 53) be **GRANTED**, and that Defendant Bankers Insurance LLC's Crossclaims (Document 43) be **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:   June 3, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA