**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

TALBOT 2002 UNDERWRITING
CAPITAL LTD, et al.,

                Plaintiffs,

v.                                    CIVIL ACTION NO.   5:15-cv-12542

OLD WHITE CHARITIES, INC.,

                Defendant.


**MEMORANDUM OPINION AND ORDER**


The Court has reviewed *Plaintiffs and Third Party Defendants HCC and Underwriters'
Motion for Summary Judgment* (Document 193) and *Memorandum of Law in Support* (Document
196), and *Third Party Defendant All Risks, Ltd.'s Motion for Summary Judgment* (Document 197)
and *Memorandum of Law in Support* (Document 198).   The Court has also reviewed the *Response
of Old White Charities, Inc. in Opposition to Motions for Summary Judgment* (Document 199) and
*Bankers Insurance LLC's Omnibus Response to Motions for Summary Judgment* (Document 202).
Additionally, the Court has reviewed *Third Party Defendant All Risks Ltd.s Reply in Support of its
Motion for Summary Judgment* (Document 203) and the *Reply in Support of Plaintiffs and Third
Party Defendants HCC and Underwriters' Motion for Summary Judgment* (Document 206).   For
the reasons set forth herein, the Court finds that the motions for summary judgment should be
granted.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

A brief review of the claims giving rise to the present case is beneficial to effectively address the pending motions.   The Plaintiffs, Talbot 2002 Underwriting Capital Ltd., White Mountains Re Sirius Capital Ltd, and Markel Capital Limited (collectively, the "Underwriters" or "Plaintiffs"), brought suit against Old White Charities, Inc. ("Old White") on August 19, 2015. The Plaintiffs seek a declaratory judgment on obligations arising under prize indemnity insurance policies issued by the Plaintiffs to Old White.   Old White is a non-profit corporation affiliated with the Greenbrier Resort.   The insurance policies in question were in effect from June 30, 2015, through July 7, 2015, and proposed to compensate Old White for any losses incurred in a "hole-in-one" contest offered by the Greenbrier Resort and hosted on the 18th hole of Old White TPC golf course during the Greenbrier Classic and Pro-Am, which took place from July 1, 2015, through July 5, 2015.   Under the terms of a promotion offered by the Greenbrier Resort, the Hole-In-One Fan Jackpot (the "promotion"), the Greenbrier promised to pay fans seated in the grandstands $100 for the first hole-in-one, $500 for the second hole-in-one, and $1,000 for the third.   To insure against these payouts, the insurance policies in question issued by the Plaintiffs pledged to pay Old White $150,000 for the first hole-in-one made by a golfer, $750,000 for the second, and $1,400,000 for the third, for a total aggregate insurance value of $2,300,000.   Among the exclusions and limitations in the policies was a provision requiring that the 18th hole be at least "170 yards from the tee."   (Pl. Complaint at ¶14.)   During the tournament, two golfers hit a hole-in-one at the 18th hole.   The owner of the Greenbrier, James Justice, allegedly paid fans seated in the grandstands around the 18th hole "a total of roughly $200,000."   (*Id.* at ¶24.)   It is undisputed that both holes-in-one were hit from a distance of only 137 yards.   It is further undisputed that,

2

when completing and executing the application for the insurance policy, both Old White and its agent knew the application contained a 150-yard minimum on the hole to be covered. (Pl. Sum. Judg. Motion Ex. F at 29:16-19.)

Old White enlisted Bankers Insurance, LLC ("Bankers") to procure the insurance coverage in question, and Bankers requested that All Risks Ltd. ("All Risks") serve as its broker.  HCC Specialty Underwriters ("HCC") served as the representatives of the Plaintiffs in issuing the policy to Old White.   In their complaint, the Plaintiffs alleged that Old White, in seeking insurance for the promotion, indicated that the yardage on the 18th hole was "[a]pprox 175 [yards] [a]verage," and warranted that "[t]he [i]nsured Hole-In-One must be taken from a distance of at least 150 yards for all competitors."   (*Id.* at ¶32.)   The Plaintiffs further alleged that HCC and All Risks negotiated the final policy language requiring the 18th hole to be at least 170 yards from the tee. The Plaintiffs also alleged in their complaint that, while the policy was issued, "neither Old White nor any of its agents" ever paid the required premium payments.   (*Id.* at ¶48.)   Old White subsequently made a demand for $900,000 in insurance coverage on the policy, and the Plaintiffs brought this suit shortly thereafter.   The Plaintiffs seek declaratory judgment on the grounds that (1) the policy at issue did not provide coverage for Old White's losses based on Old White's failure to satisfy minimum yardage requirements; (2) the Plaintiffs may rescind the policy based on material and/or incorrect statements made by Old White in its application for coverage; (3) coverage was excluded based on material deviation from the information provided to the Plaintiffs by Old White; (4) coverage is excluded based on Old White's failure to pay the policy premium; and (5) the policy was void based on the failure of Old White and the Plaintiffs to reach a meeting of the minds as to a material term of the policy.

On September 11, 2015, Old White answered the Plaintiffs' complaint and simultaneously filed a *Counterclaim* (Document 13) against the Plaintiffs, and at the same time brought a *Third Party Complaint* (Document 14) against HCC, All Risks, and Underwriters at Lloyd's London ("Lloyd's").   Therein, Old White alleges that HCC and All Risks acted as agents for Lloyd's and the Plaintiffs in procuring the insurance policies at issue in this case.[1]   Old White claimed that in applying for these policies, Bankers and Old White "explained all the conditions" for the promotion, including "the fact that Old White had no control over the distance the pins were set because the PGA had sole and exclusive control over the pins."   (Old White's Third Party Complaint, at ¶13.)   Specifically, Old White alleged that it placed in the application the following language:

> Old white Charities requests hole-in-one coverage for all five days of their tournament . . . The hole to be considered for Hole-in-One Coverage is #18 which plays an average of 175 yards.   The pins (as always in a PGA tour event,) will be set in a new location each morning of the Greenbrier Classic by the PGA.   The insured has no idea nor will have any influence as to where the pins will be set.

(*Id.* at ¶14.).   Old White claimed that it was "never advised" by HCC, All Risks, or Lloyd's that insurance was unavailable due to its inability to control the distance.   (*Id.* at ¶15.)   Old White alleged that it was contacted by Bankers on June 26, 2015, and informed that the insurance was bound for the promotion, and it then "overnighted the premium of $112,684.12 to Bankers," after which it was told the insurance was in effect for the tournament.   (*Id.* at ¶16-17.)   After two golfers hit holes-in-one during the tournament, Old White claimed that the Plaintiffs, All Risks, "and/or HCC all wrongfully refused to pay the claims, even though they had bound the coverage and accepted the premium without advising Old White that there was any change to the conditions

---

[1] The policy numbers for these policies, per Old White's Third Party Complaint, are L009216, L009217, and L009218. (Pl.'s Third Party Complaint, at ¶6.)

of the application."   (*Id.* at ¶23.)   Old White claimed that it was entitled to the insurance proceeds in the policies, and that "[t]he first time Old White was aware of the alleged 170-yard limit was when they received the reservation of rights letter from HCC."   (*Id.* at ¶26.)

Based on those allegations, Old White sought recovery under West Virginia Law for breach of contract by HCC, All Risks, and Lloyd's, as well as punitive damages, pre-judgment and post-judgment interest, as well as fees and costs.   Old White also sought recovery for breach of the implied covenant of good faith and fair dealing, alleging that the Plaintiffs' claim that Old White failed to pay the policy premium caused reputational damage to itself, the Greenbrier, and James Justice.   Additionally, Old White brought a tort claim of negligence and a claim of fraud.

On October 13, 2015, HCC moved to Dismiss Old White's third party complaint.   In an April 19, 2016 *Memorandum Opinion and Order* (Document 95), this Court granted HCC's motion to dismiss the third party complaint as to Old White's bad faith claims under the West Virginia Unfair Trade Practices Act and for common law bad faith, but denied the motion to dismiss on all other grounds.   On November 13, 2015, All Risks separately moved to Dismiss Old White's third party complaint for reasons similar to those argued by HCC.   In a May 5, 2016 *Memorandum Opinion and Order* (Document 99), this Court also granted All Risks' motion to dismiss the third party complaint as to Old White's statutory and common law bad faith claims, but denied the motion to dismiss on all other grounds.   As a result, Old White's third party claims of breach of contract, negligence, and fraud still stand.

On September 15, 2016, the Plaintiffs, HCC, and Lloyd's moved for summary judgment as to the Plaintiffs' claims for declaratory judgment and the remaining claims in Old White's third party complaint.   On September 15, 2016, All Risks also moved for summary judgment on the

remaining claims in Old White's third party complaint.   Old White responded in opposition to

both summary judgment motions on September 30, 2016.   Bankers, as an intervening defendant,

submitted an omnibus response in opposition to the summary judgment motions on September 30,

2016.   All Risks, HCC, Lloyd's, and the Plaintiffs all filed replies on October 6, 2016.   The

motions for summary judgment are ripe for review.

### STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that

"[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P.

56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v.

Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could

affect the outcome of the case.   *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v.

Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning

a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict

in the nonmoving party's favor.   *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News &

Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material

fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*,

477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must

view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light

most favorable to the nonmoving party.   *Hoschar*, 739 F.3d at 169.   However, the non-moving

6

party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility.   *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986).   If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.   If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."   *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

The Plaintiffs seek summary judgment on their complaint for declaratory relief against Old White.   The Plaintiffs and the third party Defendants HCC and Lloyd's jointly seek summary judgment concerning the remaining claims of breach of contract, negligence, and fraud pending in Old White's counterclaim and third party complaint.   Third party Defendant All Risks also seeks summary judgment against Old White concerning the remaining claims of breach of contract,

negligence, and fraud in Old White's third party complaint.   Although these motions are presented separately, they are nearly identical in argument and, therefore, the Court will address them together.

A. *The Plaintiffs' Summary Judgment Argument for Declaratory Relief*

The Plaintiffs argue that they are entitled to summary judgment on their claim of declaratory relief of non-coverage concerning the prize indemnity policies for five different reasons, presented in the alternative: (1) Old White did not comply with the minimum yardage requirement written into the policy; or (2) rescission of the policy is available because Old White made material misrepresentations to the Plaintiffs in the application for insurance; or (3) coverage is excluded because of a material deviation by Old White; or (4) coverage is excluded because Old White failed to pay the premium on time; or (5) the policy is void because there was never a meeting of the minds between the Plaintiffs and Old White.   The Plaintiffs assert that deposition testimony and evidence show that no genuine dispute of material fact exists concerning the information given to Plaintiffs by Old White in the application, and that the Plaintiffs are therefore entitled to a declaration that they can rescind the policy as a matter of law.

The Plaintiffs first argue that they are entitled to rescind the policy, and that no coverage exists for Old White, because Old White breached the minimum yardage requirement of the policy when the holes-in-one were made at a distance of only 137 yards.   In response, Old White argues that it did not breach the contract because it was not aware of, and never agreed to, the minimum yardage requirement in the policy.   Old White contends that it clearly informed the Plaintiffs that the PGA Tour would establish the length of the hole, and that it therefore had no say in the matter and did not agree to any certain yardage requirement in the policy.   Old White also argues that

the Plaintiffs cannot be allowed to rescind the policy because the acts of the Plaintiffs, HCC, Lloyd's, and All Risks created a reasonable expectation of insurance coverage in Old White.   Old White argues that the negotiations between Old White and the Plaintiffs and their agents are riddled with ambiguity, and that the terms of the policy were not effectively communicated to the insured.

The Court finds that, as a matter of law, Old White is not entitled to coverage under the policy because it did not stay within the conditions of the contract.   Pursuant to West Virginia law, "where the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."   *Erie Ins. Property and Cas. Co. v. Daughtrey*, No. CIV.A. 1:07-00489, 2008 WL 3852137, at *2 (S.D.W. Va. Aug. 15, 2008) (Faber, J.).

Here, the provisions of the insurance policy contract were clear and unambiguous.   It is undisputed that Bankers filled out an application for an insurance policy with the Plaintiffs at the request and guidance of Old White.   Gene Hayes, an employee of Bankers who completed the application on behalf of Old White and then forwarded the application to Old White to be executed, testified that he knew the application contained a minimum yardage requirement of 150 yards concerning the covered hole, and stated on the application that the hole in question would play an approximate average of 175 yards.   The application for insurance completed and executed by Old White clearly contained this provision, and it is undisputed that Old White knew about this warranty in the application.   Further, the policy binder sent to both Bankers and Old White contained a warranty maintaining that the designated hole covered by the insurance policy must be at least 170 yards from the tee.   (Old White's Resp. in Opposition to Sum. Judgment Mot., Ex. 27.)   Additionally, Robin Lang, who was Vice President of HCC at the time the policy was bound,

testified by sworn affidavit that the distance of the hole was a specific factor for underwriters in contemplating whether to write hole-in-one insurance.   Ms. Lang testified that, had the minimum yardage requirement in the policy been less than 170 yards, the premium would have been higher; and, had HCC or the Plaintiffs known that the hole would only play 137 yards, the policy would not have been issued at all.

These undisputed facts clearly indicate that the terms of the insurance contract between the Plaintiffs and Old White were unambiguous.   Further, testimony from Old White and its agent Bankers clearly indicates that Old White and Bankers knew the application for insurance contained a 150-yard minimum on the covered hole.   Old White's own employees testified that, when the holes-in-one were hit during the tournament, the hole played only 137 yards.   Thus, even if a dispute exists concerning the 170-yard minimum in the final policy binder, there is no dispute that the 150-yard minimum in the application was known and agreed to by Old White and its agent. Therefore, it should be given full effect, and Old White is not entitled to coverage under the policy as a matter of law.

Old White's arguments concerning a reasonable expectation of coverage also fail as a matter of law.   In general, the doctrine of reasonable expectations requires "that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."   *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 365 S.E.2d 488 (W.Va. 1987).   Whether a reasonable expectation of coverage exists depends on the facts alleged in the pleadings, and under West Virginia law, traditionally required a showing of ambiguity in the language of the contract.   However, the rule has been extended to cover situations where

statements or actions by an agent created a misconception regarding the coverage provided by the policy.  *Casto*, 2009 WL 2915132, at *1-2; *Robertson v. Fowler*, 475 S.E.2d 116, 120 (W.Va. 1996); *Hill v. John Alden Life Insurance Co.*, 556 F.Supp.2d 571, 574-75 (S.D.W.Va. 2008) (Chambers, J.).  The doctrine is "generally limited to *specific conduct by an agent during the application or administration process*."  *Lansing*, 2012 WL 1566354 at *4, quoting *Costello v. Costello*, 465 S.E.2d 620, 624 (W.Va. 1995) (emphasis added).

The Court finds that Old White has not presented any evidence whatsoever that the Plaintiffs or their agents included ambiguities in their negotiations or failed to effectively communicate the policy restrictions.  Employees from both Bankers and Old White testified to knowing about the 150-yard minimum placed in the application executed by Old White, and Old White has presented no evidence to the contrary.  (Pl. Sum. Judg. Motion Ex. F at 29:16-19.)  Mr. Hayes (the employee of Bankers) even went so far as to mark out other provisions of the application that were not appropriate to the Greenbrier Classic, but did not change the 150-yard requirement in the application.  Mr. Hayes testified that, as of June 15, 2015, Bankers, and therefore its principal, Old White, were aware that policy negotiations were still ongoing between All Risks and HCC specifically concerning the minimum yardage requirement in the policy, and that the Plaintiffs wanted a minimum yardage requirement written into the policy.  (Pl. Sum. Judg. Motion Ex. F at 40:2-16.)  Old White has provided no evidence of any ambiguities, acts or statements by the Plaintiffs' agents that would have created a misconception.

Viewing these facts in the light most favorable to the non-moving party, Old White has failed to present evidence that would allow a reasonable juror to find that the Plaintiffs created a reasonable expectation of coverage for Old White.  At no point were the terms of the policy

11

ambiguous, minimum yardage requirements were discussed throughout, and Old White and its agent were involved throughout the entire period.   Therefore, summary judgment is appropriate on the Plaintiffs' declaratory judgment claim.

Given the Court's finding that the Plaintiffs are entitled to summary judgment on the coverage question, summary judgment is also appropriate as to Old White's claims of common law and statutory bad faith against the Plaintiffs.[2]   According to the West Virginia Supreme Court of Appeals, "[g]enerally, a court must find that there is coverage before there can be common law bad faith and UTPA claims against an insurance company."   *Cava v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 753 S.E.2d 1, 9 n. 6 (W. Va. 2013).   Therefore, because the Court has found that Old White is not entitled to coverage under the policy in question, there can be no common law or statutory bad faith claim brought by Old White against the Plaintiffs and third party Defendants.

B.   *The Plaintiffs, HCC, and Lloyd's Arguments for Summary Judgment on Old White's Claims*

The Plaintiffs and third party Defendants HCC and Lloyd's also seek summary judgment on the remaining pending claims of breach of contract, negligence, and fraud asserted by Old White in its counterclaim and third party complaint.[3]   The Court will address each of these three claims.

---

2 In this Court's previous *Memorandum Opinion and Order* (Document 95) dated April 19, 2016, and *Memorandum Opinion and Order* (Document 99) dated May 5, 2016, the Court dismissed Old White's common law and statutory bad faith claims against HCC and All Risks.   Therefore, the Court only addresses these claims as to the Plaintiffs and Lloyd's.

3 Old White's counterclaim against the Plaintiffs and Third Party Complaint against Third Party Defendants HCC, Lloyd's, and All Risks are the same.   Both alleged the same claims against the Plaintiffs and the Third Party Defendants under the same facts.   Therefore, the Court addresses the summary judgment concerning those claims at the same time, even though they are separately filed against the Plaintiffs and the Third Party Defendants.

### 1.  Old White's Breach of Contract Claim

The Plaintiffs, HCC, and Lloyd's argue that they are entitled to judgment as a matter of law concerning Old White's breach of contract claim because no coverage exists for Old White under the policy.   The Plaintiffs argue that, because they have the right to rescind the insurance coverage, there is nothing to pay, and therefore, no claim can go forward that they breached a contract.   The Plaintiffs also argue that Old White's breach of contract claims should fail because Old White did not fully perform under the policy inasmuch as it failed to pay the premium in a timely manner and failed to submit the appropriate documentation and information when the holes-in-one were made.

The Court notes at the outset that, as explained above, the Plaintiffs are entitled to summary judgment based on Old White's failure to comply with the 150-yard minimum in the policy application.   Because Old White did not comply with the minimum yardage requirement, the Plaintiffs and Lloyds are not required to pay Old White under the policy, and the Plaintiffs have not breached the contract.   The Plaintiffs are entitled to summary judgment on Old White's claim for breach of contract.

HCC argues that it is entitled to summary judgment as to Old White's breach of contract claims because HCC was not a party to the underlying contract.   HCC relies on *Fleming v. United Teachers Assoc. Ins. Co.*, 250 F.Supp.2d 658 (S.D.W.Va. 2003) (Faber, J.), and argues that it was an agent of the Plaintiffs and Lloyd's in binding the coverage for Old White, and is not a part of the policy between Old White and the Plaintiffs.   In *Fleming*, then Chief Judge Faber held that even if the defendant agent for an insurer in a suit for fraud committed the wrongs alleged by the plaintiff in that case, it was indisputable that the defendant was acting within the scope of the

agency relationship and therefore could not be liable to the plaintiff.   *Id.* at 662-663.   HCC similarly asserts that it was not a party to the contract here because it worked as an agent for the Plaintiffs and Lloyds, and as such, Old White's breach of contract claim must fail as a matter of law.

In response, Old White makes essentially the same argument it made with respect to declaratory judgment, or in other words, that HCC and Lloyd's created a reasonable expectation of coverage because the process of issuing the policy was rife with ambiguities.   As the Court has previously found above, however, Old White has presented no evidence to create a dispute of material fact as to its reasonable expectation of coverage.

Based on the undisputed evidence, as detailed above, the Court finds no ambiguities in the language of the contract or its application, and no instances of specific conduct by an agent of the Plaintiffs during the process resulting in affirmative action that would have created a misconception.   It is undisputed that Bankers, as Old White's agent, knew from the filling out of the application that the Plaintiffs and their agents required a minimum yardage requirement to be written into the policy.   Therefore, summary judgment on behalf of the Third Party Defendants is appropriate and Old White's breach of contract claims must fail.

2.   *Old White's Negligence Claims*

The Plaintiffs, HCC, and Lloyd's also seek summary judgment with respect to Old White's claims of negligence.   The Plaintiffs and the third party Defendants argue that Old White has submitted no evidence of negligence on behalf of the Plaintiffs, HCC, and Lloyd's.   The Plaintiffs assert that Old White has not shown that Plaintiffs had any duty, nor that they breached any duty they might have had.   The Plaintiffs also argue that Old White has presented no evidence of any

14

damages, and argues that HCC cannot be liable under a claim of negligence because HCC was merely an agent of the Plaintiffs and not a party to the contract for insurance.

Old White counters this argument by relying on its earlier allegations that the Plaintiffs and HCC created a reasonable expectation of coverage and can therefore be liable for an alleged breach of duty.   Although this responsive argument, with respect to negligence and duty, is somewhat tenuous when a proposed contract is at issue, the Court has found that Old White has not provided sufficient evidence to create a genuine issue of material fact that the Plaintiffs, HCC, and Lloyd's created a reasonable expectation of coverage.   As described above, Old White has presented no evidence to create a dispute of material fact that any ambiguities existed in the language of the insurance contract, or that any statements or actions were made by the Plaintiffs, HCC, or Lloyd's that would suggest that the 18th hole would be covered without a minimum yardage requirement. Thus, summary judgment in favor of the Plaintiffs and the Third Party Defendants is appropriate with respect to Old White's claims for negligence.

### 3. Old White's Claims for Fraud

Lastly, the Plaintiffs, HCC, and Lloyd's seek summary judgment on Old White's claims of fraud or fraudulent concealment.   The Plaintiffs argue that Old White's claims of fraud must fail because Old White fails to prove the essential elements of fraud cited in *Kessell v. Leavitt*, 511 S.E.2d 720, 751 (W.Va. 1998).   The Plaintiffs argue that Old White has not presented evidence sufficient to show that the Plaintiffs committed an act that was material, false, and justifiably relied on, and that Old White was damaged because of that act.   The Plaintiffs and HCC assert that at no point did it represent to Old White or Old White's broker that it would bind coverage for Old White without a minimum yardage requirement.   Therefore, the Plaintiffs argue that no evidence

15

exists to show fraud on the part of the Plaintiffs, HCC, and Lloyd's, and that summary judgment is appropriate.

Old White argues that it has presented facts sufficient to prove fraud.  Without any specifics in this part of its response, Old White alludes to its discussion throughout its response brief wherein it alleges that the Plaintiffs concealed language from Old White and engaged in fraud in order to place a 175-yard minimum yardage requirement into the policy that was not agreed upon, and that summary judgment is thus inappropriate.

The West Virginia Supreme Court of Appeals has stated that "[f]raud has been defined as including all acts, omissions, and concealments which involve a breach of legal duty, trust or confidence justly reposed, and which are injurious to another, or by which undue and unconscientious advantage is taken of another."  *Stanley v. Sewell Coal Co.*, 285 S.E.2d 679, 682 (W.Va. 1981).  The elements of a cause of action for fraud are "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false [and] that the plaintiff relied on it and was justified under the circumstances in trying to rely on it; and (3) that he was damaged because he relied on it."  *Kessel*, 511 S.E.2d at 751 (W.Va. 1998).  In West Virginia, claims for fraud can also be based on concealment of the truth, because "[f]raud is the concealment of the truth, just as much as it is the utterance of a falsehood."  *Id.* at 752, quoting *Frazier v. Brewer*, 43 S.E. 110, 111 (W.Va. 1902).

Here, Old White has characterized its claim as one of fraudulent concealment.  In support of its claim and against the Plaintiffs' claim for summary judgment, Old White asserts that HCC made changes to the terms of the policies in question, intentionally and fraudulently failed to notify Old White of these changes, and failed to provide Old White with the policy documents.

16

Importantly, however, Old White has presented no evidence to the Court substantiating these claims.   Old White has not disputed the fact that Bankers, and thereby Old White, was aware that the insurance application contained a minimum yardage requirement, that Bankers employee, Mr. Hayes, completed the application, and that Old White employee, Mr. Henthorn, executed the application on behalf of Old White.   Old White has further failed to present any evidence indicating that the Plaintiffs, HCC, or Lloyd's committed an act that concealed or changed any information during the application and negotiation process.   It is undisputed that Bankers knew that, as of June 15, 2015, policy negotiations were still ongoing between All Risks and HCC specifically concerning the minimum yardage requirement in the policy, and that the underwriter specifically wanted the yardage requirement in the final policy to be exactly 170 yards.

In the light most favorable to Old White, the Court finds that Old White has not submitted any evidence sufficient for a reasonable juror to determine that the Plaintiffs, HCC, or Lloyd's committed any of the elements of fraudulent concealment.   Therefore, summary judgment in favor of the Plaintiffs, HCC, and Lloyd's is appropriate as to Old White's claims of fraudulent concealment.

### C. All Risks' Arguments for Summary Judgment

Finally, the third party Defendant All Risks filed a separate motion for summary judgment and seeks summary judgment on the remaining claims asserted in Old White's third party complaint.

#### 1. Old White's Claims of Breach of Contract

All Risks first seeks summary judgment on Old White's breach of contract claim.   All Risks argues that, as it was an agent working for Lloyd's to supply coverage, it was not a party to

17

the insurance contract and therefore cannot be held liable for a breach.   All Risks asserts that it clearly conveyed to Bankers, who then conveyed to Old White, the application for insurance, which included the minimum yardage requirement.   In negotiating the policy, All Risks argues that it relied on Old White's statement that the 18th hole played an average of 175 yards.   All Risks argues that it made no statements nor undertook any actions that would have led Old White to believe that HCC or the Plaintiffs intended to bind the coverage without a minimum yardage requirement.   In fact, All Risks further asserts that it is undisputed that the negotiations between it and HCC included negotiations of the language surrounding the minimum yardage policy, and that once the language was agreed to and the final policy binder sent to Bankers, no objections or questions were brought to the attention of All Risks or HCC.   Therefore, because no evidence has been presented to show that All Risks created a reasonable expectation of insurance coverage, All Risks asserts that it is entitled to judgment as a matter of law on Old White's breach of contract claim.

Old White relies on the same argument it has made throughout and counters that there was a reasonable expectation of coverage under the policy created by All Risks[4].   Old White argues that All Risks had discussions and made statements concerning the coverage with HCC, but at no point informed Bankers and Old White that a minimum yardage requirement would be part of the policy.   Old White asserts that All Risks "acquiesced to language in a binder that was blatantly contradicted to what All Risks *knew* the insured wanted," and that by failing to warn Bankers and

---

[4] As the Court has previously provided an in-depth explanation of the law of reasonable expectations of coverage, and because Old White's arguments against All Risks are nearly indistinguishable from its arguments against the Plaintiffs, HCC, and Lloyd's, it will not reiterate that law.

Old White accordingly, All Risks created a reasonable expectation of coverage under the policy. (Old White's Resp. in Opposition to Sum. Judgment Mot., at 14.)

For the reasons previously stated in the opinion, the Court finds that Old White has failed to set forth any evidence to create a genuine dispute of material fact to support a finding of a reasonable expectation of coverage.  Old White has presented no evidence indicating that All Risks presented any ambiguities to Old White during the application process or in the final policy, or that All Risks took any affirmative action which would have created a misconception about the policy.   Therefore, All Risks is entitled to summary judgment on Old White's breach of contract claim.

### 2.   Old White's Negligence Claim

All Risks next seeks summary judgment on Old White's claims of negligence.   All Risks asserts that, by definition, it is a wholesale broker of insurance that Old White engaged with to assist Old White in gaining the insurance policy in question.   All Risks argues that, due to its position as a wholesale broker with Bankers as its client, All Risks merely relayed information between the parties and, therefore, owed no duty to Old White regarding the purchase of insurance. As it owed no duty to Old White, All Risks argues that it could not have been negligent in breaching a duty, and that Old White cannot satisfy the elements of a negligence claim under West Virginia law.

Old White asserts that "ample evidence" exists of negligence on the part of All Risks. (Def. Resp. to Pl. Mot. For Summary Judgment, at 14.)   Old White argues that All Risks owed Old White a duty of honesty because "All Risks' agent understood that he was negotiating on behalf of Bankers."   (*Id.*)   Old White further asserts that All Risks could be considered its subagent,

appointed by Bankers.   Old White argues that, in this position, All Risks failed to relay information and "undertook to negotiate the final terms of the insurance policy . . . without consulting with the insured or Bankers and without even advising them of the negotiations and resulting in policy terms after the fact." (*Id.*)   Therefore, Old White asserts that it has provided sufficient facts for a reasonable juror to find that All Risks was negligent, and that summary judgment is therefore inappropriate.

In order to establish a claim of negligence under West Virginia law, a plaintiff must prove by a preponderance of the evidence that "[1] the defendant owed a legal duty to the plaintiff and [2] that by breaching that duty [3] the defendant proximately caused the injuries of the plaintiff." *Needy v. Balk Inc.*, 668 S.E.2d 189, 197 (W.Va. 2008).   "[T]he threshold question in all actions in negligence is whether a duty was owed."   *Id.* at 197.   The determination of whether a defendant owes a plaintiff a duty of care is a question of law to be rendered by the court.   Syl. Pt. 5, *Aiken v. Debow*, 541 S.E.2d 576 (W.Va. 2000).   To prevail on a negligence claim under West Virginia law, a plaintiff must prove that the defendant's negligence was the proximate cause of the plaintiff's injury.   *Anderson v. Moulder*, 394 S.E.2d 61 (W.Va. 1990).   A proximate cause is "a cause which, in natural and continuous sequence, produces foreseeable injury and without which the injury would not have occurred."   *Hudnall v. Mate Creek Trucking, Inc.*, 490 S.E.2d 56 (W.Va. 1997).   In the context of insurance contracts, "[a]s a general rule, '[w]here the agent is the agent of the insurer, acts within the scope of his authority, and his principal is disclosed, he is not liable to the insured either in contract or in tort.'"   *Benson v. Continental Ins. Co.*, 120 F.Supp.2d 593, 595 (S.D.W.Va. 2000) (Haden, J.) (internal citations emitted).

The Court finds that Old White has not presented sufficient evidence for a reasonable juror to find that All Risks was negligent.   Here, it is undisputed that Bankers, working as Old White's agent, contacted All Risks to assist Bankers in obtaining the insurance coverage for Old White.   It is further undisputed that Bankers and All Risks executed a Broker Agreement, under which Bankers was the client of All Risks, as opposed to Old White.   (All Risks Mem. In Supp., Exhibit 8, Old White's resp. to Mot., Ex. 33.)   All Risks, therefore, maintained no direct relationship with Old White and had no duty to communicate with Old White.

However, even if this Court found that All Risks owed Old White a duty, Old White has presented no evidence to support a finding that All Risks breached any duty, or that All Risks' negligence was the proximate cause of any injury Old White suffered.   While Old White argues All Risks failed to relay information, it is undisputed that employees of Bankers were both aware that negotiations were ongoing as late as July 15, 2015, concerning the minimum yardage requirement in the final policy, and that Bankers was sent the final policy binder before the Greenbrier Classic started.   Old White has proffered no evidence to show that All Risks negotiated the final terms of the policy without consultation with Bankers or Old White.   In fact, it is undisputed that All Risks continually used the information provided by Old White in negotiating the language of the minimum yardage requirement with HCC.   (Old White's Resp. to Mot. for Summary Judgment, Ex. 13).   Contrary to what Old White alleges, All Risks at all times relied on the particulars of the hole provided by Old White and Bankers, specifically that the hole "won't be much less if any – no less than I would say 168 to 175."   (*Id.*)

Viewed in the light most favorable to Old White, the Court finds that Old White has not presented sufficient evidence for a reasonable juror to find that All Risks failed to relay information

to Old White, negotiated policy terms without consulting with Bankers or Old White, or failed to advise Old White or Bankers of the resulting policy terms.   Because Old White has failed to present evidence sufficient to create a genuine dispute of material fact on the negligence claim, summary judgment in favor of All Risks is appropriate.

### 3.   Old White's Claim of Fraud

Lastly, All Risks seeks summary judgment against Old White on its claim of fraud or fraudulent concealment.   All Risks argues it is entitled to summary judgment on the grounds that Old White has not proven the necessary elements of a cause of action of fraud.   All Risks argues that, because it was the wholesale broker who worked between Bankers and HCC, All Risks had no relationship with Old White whatsoever.   All Risks argues that it never communicated with Old White, and therefore could not have engaged in a fraudulent act that Old White could have relied on.   Further, All Risks argues that none of the information it provided to Bankers was in any way fraudulent.   All Risks asserts that Bankers, which communicated with Old White, understood the language of the application that its employee Gene Hayes completed, and that Bankers received and understood the policy binder.   Thus, All Risks asserts that summary judgment in its favor is appropriate.

Old White counters that the record supports many occasions where All Risks concealed material information from Old White.   Old White argues that All Risks made changes to the policy and never advised Old White of these changes, specifically the minimum yardage requirements. Old White asserts that withholding the truth in this manner constituted fraudulent concealment, and that its claims of fraud should stand.

Old White relies on the same facts and law argued in support of its fraud claim against the Plaintiffs, HCC, and Lloyds.   For the reasons previously stated in this opinion, and viewing the undisputed evidence through the lens most favorable to Old White, the Court finds that no reasonable juror could find that All Risks fraudulently concealed any information from Old White or committed any.   Therefore, the Court finds that summary judgment is appropriate in favor of All Risks on Old White's claim of fraud.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Plaintiffs and Third Party Defendants HCC and Underwriters' Motion for Summary Judgment* (Document 193) be **GRANTED**, that *Third Party Defendant All Risks, Ltd.'s Motion for Summary Judgment* (Document 197) be **GRANTED**, and that Defendant Old White's *Counterclaim* (Document 13) and *Third Party Complaint* (Document 14) be **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        January 6, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

23